■ In the Matter of BARRY FLETCHER, JR., Appellant, v BARBARA YOUNG et al., Respondents. DONALD J. SCHWARTZ, as Law Guardian, Appellant. (And Two Other Related Proceedings.) [722 NYS2d 100] —Lahtinen, J. Appeals from three orders of the Family Court of Delaware County (Estes, J.), entered August 4, 1999, which, *inter alia,* granted Amy L. Young's cross application, in three proceedings pursuant to Family Court Act article 6, for custody of a child born to Barry Fletcher, Jr., and Amy L. Young.

The female child who is the subject of these custody proceedings was born in 1994 to a 19-year-old father, Barry Fletcher, Jr., and a 16-year-old mother, Amy L. Young. During the mother's pregnancy, she lived at home with her parents but approximately a month after the birth of the child the parents began living together, engaging the child's respective grandparents as babysitters. The mother continued her education and graduated from high school in June 1995, the child's maternal grandmother, Barbara Young (hereinafter the grandmother), becoming the primary caregiver during this time. In December 1995, the child's mother and father separated, with the child and her mother moving into the maternal grandparent's home where they remained until June 1996. For the next 14 months, the child lived at different residences with different caregivers in the following order: (1) her mother and her mother's paramour, (2) her father and her paternal grandparents, (3) her mother, (4) her mother and her mother's paramour, (5) her maternal grandparents and (6) once again with her mother and her mother's paramour. From August 1997 until the conclusion of the proof on the instant proceedings in January 1999, the child resided with her maternal grandparents.

The legal proceedings affecting the child's custody set forth in the record reflect a March 1996 stipulation between the parents and the child's then Law Guardian granting the mother custody and the father generous visitation rights. In July 1996 the grandmother filed a petition for custody against the mother alleging that the mother used illegal drugs and neglected the child. Apparently, that petition was dismissed when the child's grandmother failed to appear at the hearing date.* In July and August 1997 the grandmother and father, respectively, filed petitions for custody and upon the default of the mother, agreed to an order granting them joint legal custody with the child's primary residence to be with the grandmother "for the immediate future." In January 1998 the grandmother filed a petition for sole custody of the child alleging that the father had inappropriately fondled the child on December 24, 1997. The father counterclaimed in March 1998 seeking a court-ordered visitation schedule and in April 1998, filed a petition seeking sole custody of the child. The mother was added as a party respondent to the proceedings initiated by the grandmother and the father by orders of Family Court and filed her own petition for custody in June 1998.

The separate proceedings were tried jointly by Family Court. At the close of proof on January 28, 1999, Family Court granted the mother's motion for a trial order of dismissal of the grandmother's custody petition "for failure to establish extraordinary circumstances" (see, Matter of L., 61 NY2d 420, 427; Matter of Gray v Chambers, 206 AD2d 619, 620). Family Court reserved decision on a similar motion by the father directing his counsel to address the issue in her memorandum. Approximately six months after the close of proof, Family Court rendered a written decision culminating in three orders which (1) rescinded all prior Family Court orders and awarded custody to the mother with visitation to the father, (2) dismissed the custody petition of the grandmother against the mother on the merits because the grandmother failed to establish extraordinary circumstances and dismissed the petition of the grandmother against the father as moot, and (3) denied the father's counterclaim and petition on the merits. The father appeals from each and every part of the orders except that portion that granted him visitation. The Law Guardian appeals from those portions of the orders that awarded sole custody of the child to the mother and dismissed the father's petition for custody.

On appeal, the father argues that reversal is required

---

* The order dismissing the petition is not included in the record on appeal.

because Family Court's findings of fact in favor of the mother are not supported by the record, the child's best interest would be served by awarding custody to him, Family Court erred in not allowing impeachment evidence of the child's alleged out-of-court statement that she was sexually abused by her father, Family Court used an incorrect standard of proof and arbitrarily imposed a three-year rule to relevant evidence. The Law Guardian urges that the weight of the evidence requires modification of Family Court's order so as to award custody to the father.

Initially, we note that neither the father nor the mother had physical custody of the child at the time their respective custody petitions were filed. Accordingly, under the circumstances presented, both parents were on an equal footing with the identical burden of establishing that the child's best interest would be served by awarding sole custody to him or her.

In applying the best interest standard, Family Court must consider such relevant factors as maintaining stability in the child's life, the wishes of the child, the quality of the home environment, each parent's past performance, relative fitness and ability to guide and provide for the child's intellectual and emotional development, and the effect the award of custody to one parent would have on the child's relationship with the other (*see, Matter of Huff v Keely*, 249 AD2d 844, 845). The evaluation of these sensitive factors is best made by Family Court since it is in the best position to evaluate the parties' testimony, character and sincerity (*see, Matter of Alice A. v Joshua B.*, 232 AD2d 777, 779). Additionally, because Family Court has an opportunity to assess each witness's credibility, its factual findings are accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record (*see, Matter of Nathaniel TT.*, 265 AD2d 611, 614, *lv denied* 94 NY2d 757).

With these basic principles in mind, we review the record evidence. It is clear that at the time of the subject hearing, the evidence established that both the mother and the father were fit and loving parents. Although the mother's conduct for approximately four years following the birth of the child was less than exemplary, there is sufficient evidence in the record to support Family Court's finding that the mother was then "well able to care for the child" since she had married, established a home, become employed and risen to a managerial position, abstained from any alcohol or illicit drug use and "developed a strong, loving, warm and appropriate relationship with the child." While the evidence also supports a finding that the

father has a stable home environment and has developed a strong, loving, warm and appropriate relationship with the child through his faithful exercise of his joint custodial rights acquired in September 1997, we note that he agreed that physical custody of the child be placed with the grandmother at that time. As a result, from September 1997 until the instant hearing, the grandmother once again became the primary caregiver for this child and the evidence clearly shows that the child, despite not living with a biological parent, was a normal, happy, well-adjusted preschooler who was regarded as "a very bright little girl" by her Head Start teacher. In light of the grandmother's support of the mother's application for custody and the mother's close contact with the child during this period, we find that the award of custody to the mother best promotes stability in the child's life.

The record further supports a finding that the mother is capable of giving and providing for the child's intellectual and emotional development. The mother's serious medical problems in the fall of 1997, which gave her a deeper appreciation for life, her responsible employment, her interest in the child's education and the strong mother-daughter bond that has developed and continues to strengthen, also suggest that the child's best interest will be served by awarding sole custody to the mother.

While the pictures of the father's home and the testimony of the parties concerning their respective home environments reveal no negative indication with respect to either party's home, there is little in the record on this factor. While mindful that Family Court's evaluation of those relevant factors in a proper custody determination is often supplemented by professionally prepared reports, such as a home study prepared by the Probation Department (*see*, Family Ct Act § 653), we note that neither party nor the Law Guardian requested such a report. Similarly, while the wishes of the child are often evaluated in a custody proceeding, no in camera interview was conducted (*see*, Family Ct Act § 664). Although such professional reports and transcripts would have aided our review of the issues raised herein, we do not find their absence cause for reversal.

The record does contain the position taken by the Law Guardian and an evaluation from the Delaware County Mental Health Clinic. Both support the proposition that custody of the child should be placed with the father, however, such are not controlling (*see, e.g., Matter of Aldrich v Aldrich*, 263 AD2d 579; *Matter of Perry v Perry*, 194 AD2d 837, 838). With re-

spect to that portion of the Law Guardian's submission to Family Court that concluded that "the evidence suggests that the father is the one most likely to set these feelings [of animosity towards the other parties] aside for [the child's] benefit," we are constrained to defer to Family Court's contrary conclusion, which is essentially a credibility determination reserved to the fact finder and entitled to great deference by an appellate court (*see, Matter of Hall v Keats*, 184 AD2d 825, 826).

Mercure, J. P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the order dismissing the custody petition of Barbara Young against Barry Fletcher, Jr., is modified, on the law and facts, without costs, by dismissing the petition on the merits, not as moot; and, as so modified, affirmed. Ordered that the remaining two orders are affirmed, without costs.