■ In the Matter of LEO LEONARD, Appellant, v MIRIAM PASTERNACK-WALTON, Respondent. (And Another Related Proceeding.) [914 NYS2d 794]—

Lahtinen, J. Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered April 23, 2009, which, among other things, granted respondent's application, in two proceedings pursuant to Family Ct Act article 6, for custody of the parties' child.

The parties are the unmarried parents of a daughter (born in 2007) and they have not resided together since the child's birth. In February 2008, during one of his infrequent visits, petitioner (hereinafter the father) became angry and engaged in various acts of domestic violence directed at respondent (hereinafter the mother) and the child. As a result of this conduct, he eventually was convicted of several felonies and received a lengthy prison sentence exceeding 20 years. While the criminal matter was pending, he commenced the first of these proceedings seeking visitation with the child. The mother then commenced the second proceeding requesting sole custody. After a hearing, Family Court awarded the mother sole physical and legal custody. The court limited the father's contact with the child to receiving one photograph per year, it issued an order of protection barring the father from communicating with the child until her 18th birthday, and it provided that the father's completion of anger management and parenting programs would constitute sufficient changed circumstances for him to petition for expanded visitation. The father appeals.

The father argues that Family Court erred in denying him visitation. "Although the incarceration of a noncustodial parent shall not, by itself, preclude visitation with his or her child, a denial of an application for visitation is proper where evidence demonstrates that visitation would not be in the child's best interest" (*Matter of Ellett v Ellett*, 265 AD2d 747, 747 [1999] [citations omitted]; *see Matter of Dantzler v McKane*, 48 AD3d 937, 938 [2008], *lv denied* 10 NY3d 709 [2008]). In addition to relating the father's earlier acts of physical violence and repeated use of derogatory names directed toward her, the mother testified about some of the events of February 2008 that resulted in defendant's criminal convictions. She stated that, when she was holding the child, the father threw ice into her face causing her to sustain a swollen lip. He held a knife to her

nose. He then made a knife cut on her neck. She eventually escaped and police were summoned. When the police arrived, the father had the child in his arms, and he held a knife over the child's head as he ran across a yard into a house. He refused to surrender the child to police for a protracted period. While the father's testimony painted a different version of events, Family Court credited the mother's testimony, and we accord deference to that credibility determination (*see Matter of Vann v Herson*, 2 AD3d 910, 913 [2003]). In light of the child's young age, the lack of prior meaningful contact between the father and child, the acts of domestic violence by the father against the mother and child and the father's lengthy prison sentence, there is a sound and substantial basis supporting Family Court's determination that visitation with and communication from the father would not be in the child's best interest (*see Matter of Morelli v Tucker*, 48 AD3d 919, 920 [2008], *lv denied* 10 NY3d 709 [2008]; *Matter of Dantzler v McKane*, 48 AD3d at 939).

We are unpersuaded by the father's contention that Family Court's order improperly required completion of anger management and parenting programs before any visitation would be allowed (*see generally Matter of Mongiardo v Mongiardo*, 232 AD2d 741, 743 [1996]). Instead, the order made clear that completion of such programs would be considered a sufficient change of circumstances for the father to seek expanded contact with the child (*cf. Matter of Baker v Blanchard*, 74 AD3d 1427, 1428-1429 [2010]; *Matter of Grayson v Fenton*, 13 AD3d 914, 916 [2004]). However, other factors were not foreclosed from constituting a sufficient change of circumstances even in the absence of completion of the programs; for example, such change might be found if the father's conviction was reversed or his sentence shortened and he was released from prison (*cf. Matter of Kowatch v Johnson*, 68 AD3d 1493, 1494 [2009], *lv denied* 14 NY3d 704 [2010]; *Matter of Powell v Blumenthal*, 35 AD3d 615, 616 [2006]). Stated another way, no particular change of circumstances is mandated as a prerequisite for a petition seeking increased visitation. Instead, one scenario is established where the threshold of change of circumstances will be considered satisfied. But, even as to that situation, the order does not indicate that the petition would necessarily be granted, and any change in visitation would have to be in the child's best interest (*see Matter of Goldsmith v Goldsmith*, 68 AD3d 1209, 1210 [2009]).

Finally, the record amply supports the terms of the order of protection, which the father can seek to modify in the future upon a proper showing (*see Matter of Stitzel v Brown*, 1 AD3d

826, 828 [2003]; *Matter of Royea v Hutchings*, 260 AD2d 678, 680 [1999]).

Spain, J.P., Rose, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, without costs.