# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**105**
**CAF 13-00688**
PRESENT: SMITH, J.P., CARNI, LINDLEY, AND VALENTINO, JJ.

---

IN THE MATTER OF MICHAEL CARROLL,
PETITIONER-RESPONDENT,

V                                           MEMORANDUM AND ORDER

AMY CARROLL, RESPONDENT-RESPONDENT.
-----------------------------------------
PETER J. DIGIORGIO, JR., ESQ., ATTORNEY
FOR THE CHILD, APPELLANT.

---

PETER J. DIGIORGIO, JR., ATTORNEY FOR THE CHILD, UTICA, APPELLANT PRO SE.

CHARLES J. GREENBERG, AMHERST, FOR PETITIONER-RESPONDENT.

---

Appeal from an order of the Family Court, Oswego County (Kimberly M. Seager, J.), entered March 26, 2013 in a proceeding pursuant to Family Court Act article 6. The order granted petitioner supervised visitation.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs and the petition is dismissed.

Memorandum: Petitioner father, an inmate at a correctional facility, commenced this Family Court Act article 6 proceeding seeking visitation with the child, and the Attorney for the Child (AFC) appeals from an order granting the petition. We reverse.

We note at the outset that we reject the AFC's contention that Family Court should have granted the motion to dismiss the father's petition before holding a hearing on the child's best interests (*see generally Matter of Tanner v Tanner*, 35 AD3d 1102, 1103). We agree with the AFC, however, that the court abused its discretion in granting the father's petition for visitation. "Although we recognize that the rebuttable presumption in favor of visitation applies when the parent seeking visitation is incarcerated . . . , we conclude that [the AFC] rebutted the presumption by establishing by a preponderance of the evidence that visitation with [the father] would be harmful to the [child]" (*Matter of Brown v Terwilliger*, 108 AD3d 1047, 1048, *lv denied* 22 NY3d 858).

Here, the parties married while the father was in prison, and he was still incarcerated at the time of the child's birth. The father

did not seek to establish paternity of the child until she almost was five years old (*see id.; Matter of Bougor v Murray*, 283 AD2d 695, 696). Although respondent mother brought the child to visit the father in prison shortly after she was born, the child has not visited the father there since (*see Matter of Ellett v Ellett*, 265 AD2d 747, 748). The father contends that he formed a relationship with the child while he was on parole for approximately three months in 2010, but we note that, when he was on parole again in 2011, he attempted to see the child only once. He conceded that he attempted to write to the child only twice since she was born, and there is no evidence that he attempted to communicate with the child by telephone. Indeed, the father admitted that he did not have a relationship with the child (*see Matter of Johnson v Williams*, 59 AD3d 445, 445). Further, while the father testified that he believed his sister or mother might be able to drive the child to the prison, the trip would require approximately three hours of driving in total, and the child does not have a relationship with those individuals (*see Ellett*, 265 AD2d at 747-748).

In addition, a history of domestic violence is a factor to consider in determining whether visitation would not be in the child's best interests (*see Matter of Leonard v Pasternack-Walton*, 80 AD3d 1081, 1081-1082; *Matter of Morelli v Tucker*, 48 AD3d 919, 920, *lv denied* 10 NY3d 709), and here the father admitted to engaging in a history of domestic violence against the mother, including engaging in fist fights with her. The mother testified that the father choked her during one such fight, when she was pregnant with the subject child. The father also admitted that he violated an order to stay away from the mother in 2011. We also note that the father admitted that he had been in a fight with another inmate while in prison, and that he went "on the run" from parole officers in 2010.

While "the propriety of visitation is generally left to the . . . discretion of Family Court[,] whose findings are accorded deference" (*Matter of Williams v Tillman*, 289 AD2d 885, 885), we conclude that the court's determination that there was "no evidence . . . that visitation would be harmful to [the child]" and that, therefore, visitation was "necessary and appropriate" lacks a sound and substantial basis in the record (*cf. Matter of Tuttle v Mateo* [appeal No. 3], 121 AD3d 1602, 1603-1604; *see generally Matter of Butler v Ewers*, 78 AD3d 1667, 1667-1668).

Entered: February 13, 2015                     Frances E. Cafarell
                                               Clerk of the Court