*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 19, 2015          518807
_____

In the Matter of EDWARD A.
    BROWN,
                    Appellant,

        v
                                    MEMORANDUM AND ORDER
LINDA H. AKATSU,
                    Respondent.

(And Another Related Proceeding.)
_____


Calendar Date:   January 7, 2015

Before:  Lahtinen, J.P., Garry, Rose and Devine, JJ.

                    _____


        Poissant, Nichols, Grue & Vanier, PC, Malone (Luke J.
Babbie of counsel), for appellant.

        Conboy, McKay, Bachman & Kendall, LLP, Canton (Gerald J.
Ducharme of counsel), for respondent.

        Christopher R. Curley, DeKalb Junction, attorney for the
child.


                    _____


Garry, J.

        Appeal from an order of the Family Court of St. Lawrence
County (Morris, J.), entered June 14, 2012, which, among other
things, granted respondent's application, in two proceedings
pursuant to Family Ct Act article 6, for custody of the parties'
child.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the parents of a child (born in

2010).  The father also has an older child from a previous marriage.  The mother and father lived together with both children until May 2012, at which point the mother took the subject child to California without notifying the father or advising him of the child's whereabouts.  The father then commenced the first of these proceedings seeking custody of the child.  In September 2012, the father's investigator located the mother and child in California and served the mother with the father's petition and an order to show cause directing her to return to New York with the child.  She did so promptly, answered the father's petition, and commenced the second of these proceedings seeking custody of the child.[1]  Following a fact-finding hearing, Family Court awarded sole legal and primary physical custody to the mother, with shared parenting time for the father pursuant to a schedule by which the child will spend alternate weeks with each parent until he enters school and, thereafter, if the parents do not reside in the same school district, he will spend three weekends with the father each month as well as holidays and vacations.  The father appeals.

In making an initial custody determination, "the paramount concern is the best interests of the child" (Matter of Alleyne v Cochran, 119 AD3d 1100, 1100 [2014]), which requires review of factors such as the parents' relative fitness, past performance and ability to provide a stable home environment for the child, as well as each parent's willingness to foster the child's relationship with the other parent (see Robert B. v Linda B., 119 AD3d 1006, 1007 [2014], lv denied 24 NY3d 906 [2014]; Matter of Joseph G. v Winifred G., 104 AD3d 1067, 1068 [2013], lv denied 21 NY3d 858 [2013]; Matter of Jolynn W. v Vincent X., 85 AD3d 1217, 1217-1218 [2011], lv denied 17 NY3d 713 [2011]).  The father's appeal focuses on the mother's unilateral removal of the child to California, which deprived the father of any contact with the child for more than four months.  The mother acknowledged in her testimony that her initial intention in taking this action had been to separate the child permanently from the father, to prevent any contact between them and to remain in California

---

[1]  The mother initially sought permission to relocate with the child to California, but later withdrew that request.

until enough time had passed that she could petition for custody in that state.  However, Family Court — while criticizing the mother's conduct, characterizing it as "extreme" and refusing to condone it — noted that the mother had apologized and expressed remorse for the distress her actions had caused.  By the time of the hearing, she was residing permanently in New York, had obtained an apartment and had resumed her former employment.  The court found that the mother understood that she had made a mistake in removing the child, that she had cooperated to facilitate the father's contact with the child following her return to New York, and that there was no reason to expect that this would not continue.

Family Court further credited the mother's testimony that she left New York because she was afraid of the father as a result of his angry and sometimes violent behavior.  In her testimony, the mother described several angry outbursts and jealous confrontations, including incidents in which the father kicked family pets.  The mother testified that the father had directed obscene expletives toward her, and that she had heard him directing similar insults toward his mother.  There was also testimony describing angry altercations between the father and his parents that, in the court's view, revealed a longstanding family pattern of dealing with conflict in an aggressive manner.  Although the father offered different versions of events, the court credited the mother's account, finding that the father denied or minimized his behavior, and that the father had engaged in acts of domestic violence against the mother.  This Court defers to such credibility determinations (see Matter of Leonard v Pasternack-Walton, 80 AD3d 1081, 1082 [2011]), and we note that a court is required to consider the effects of domestic violence upon the best interests of a child in making a custody determination (see Williams v Williams, 78 AD3d 1256, 1257 [2010]; Matter of Melissa K. v Brian K., 72 AD3d 1129, 1131 [2010]).

As for the parties' relative fitness as parents, the record reveals that both parents love the child, have been actively engaged in caring for him throughout his life, and are capable of providing him with a stable home.  The mother has a Bachelor's degree and was pursuing further education at the time of the

hearing.  The father had previously served in the military.  Both parents were employed, and the father had adjusted his schedule to maximize the time that he was able to spend with the child. Both parties used appropriate caregivers for the child when they were at work, and both were in good health.  There was no evidence that either parent was affected by alcoholism or other substance abuse issues.[2]

However, the record reveals significant differences in the parties' parenting styles that have led to tension and disagreements between them in the past.  The mother testified that she attempted to talk with the child and explain the reasons for discipline to him, while the father was not always reasonable in his expectations of the child, tended to be impatient and short-tempered and sometimes raised his voice.  These considerations, together with Family Court's finding as to the history of domestic violence and the mother's fear of the father, support the award of sole rather than joint custody (see Matter of DiMele v Hosie, 118 AD3d 1176, 1177-1178 [2014]; Matter of Darrow v Darrow, 106 AD3d 1388, 1390-1391 [2013]).

The child shares an affectionate relationship with his older half brother, who resides with the father.  Unfortunately, the award of physical custody to the mother separates the two children, but application of the traditional preference for keeping siblings together has become more complicated as a result of changes in family dynamics (see Matter of Luke v Luke, 90 AD3d 1179, 1182 [2011]; Matter of Bush v Stout, 59 AD3d 871, 873 [2009]), and the liberal parenting time awarded to the father offers ample opportunities for the half siblings to spend time together.  Considering the record as a whole, we find a sound and substantial basis in the record for the court's award of sole custody to the mother (see Moor v Moor, 75 AD3d 675, 677 [2010]).

_____

[2]  One parent had a health condition that was medically managed, with no impact on child care, and Family Court assigned no weight to a prior driving under the influence conviction dating from 2004, in the absence of any evidence of alcohol abuse.

Finally, as the father correctly asserts, "there is no presumption in favor of awarding custody of young children to their mother" (Matter of Barkley v Barkley, 60 AD2d 954, 955 [1978], affd 45 NY2d 936 [1978]; see Matter of Vincent v Vincent, 47 AD2d 786, 786 [1975], appeal dismissed 37 NY2d 774 [1975]). Nonetheless, based upon our review of the record, we reject the father's assertion that Family Court's determination here was inappropriately based upon a gender bias.

Lahtinen, J.P., Rose and Devine, JJ., concur.


ORDERED that the order is affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court