*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: March 31, 2016                    518088
                                                       516953
_____

In the Matter of KYLENE FF.,
                    Respondent,

        v
                                          MEMORANDUM AND ORDER

THOMAS EE.,
                    Appellant.

(And Other Related Proceedings.)
_____

Calendar Date:  February 19, 2016

Before:  Peters, P.J., Garry, Rose, Lynch and Clark, JJ.

                    _____

        Allen E. Stone, Vestal, for appellant.

        Michelle I. Rosien, Philmont, for respondent.

                    _____

Garry, J.

        Appeals (1) from an order of the Family Court of Broome
County (Lambert, J.), entered February 6, 2013, which, among
other things, granted petitioner's application, in a proceeding
pursuant to Family Ct Act article 6, to modify a prior order of
custody and visitation, and (2) from an order of said court,
entered June 10, 2013, which denied respondent's motion for,
among other things, reconsideration.

        Petitioner (hereinafter the mother) and respondent
(hereinafter the father) are the parents of two children (born in
1999 and 2001).  The mother resides in the Town of Triangle,
Broome County, and the father resides in Pennsylvania.  Pursuant
to an order entered upon consent in August 2009, the parties had

joint legal custody of the children and shared physical custody on an alternating weekly basis. Beginning in July 2011, the parties commenced a series of modification and violation proceedings.[1] Following fact-finding and Lincoln hearings, as pertinent here, Family Court awarded sole legal custody and primary physical custody to the mother, with two hours of supervised parenting time to the father each week. The father thereafter moved for renewal and a new hearing on the issues of custody and visitation, and for recusal. The court denied the motion. The father appeals from the custody order and from the order denying his motion.

A party seeking to modify an existing custody order must first demonstrate an intervening change in circumstances sufficient to warrant review of the best interests of the children (see Matter of Schlegel v Kropf, 132 AD3d 1181, 1182 [2015]; Matter of Menhennett v Bixby, 132 AD3d 1177, 1179 [2015]). Here, Family Court did not make an express finding as to whether a change in circumstances had occurred, but this Court has the authority to conduct an independent review of the record to make that determination (see Matter of Clouse v Clouse, 110 AD3d 1181, 1183 [2013], lv denied 22 NY3d 858 [2014]; Matter of Casarotti v Casarotti, 107 AD3d 1336, 1337 [2013], lv denied 22 NY3d 852 [2013]). The evidence establishes that, during the time period leading up to the current proceedings, the parties were unable to communicate without conflict. The parties testified that they did not speak to one another, and the mother's husband and the father's girlfriend testified that they acted as intermediaries and communicated with each other regarding visitation and other issues affecting the children. The relationship between the mother and the father had become so hostile that several exchanges of the children had resulted in

---

[1] A September 2010 order of custody that provided sole legal custody to the mother and scheduled parenting time to the father was in effect when the underlying proceedings were commenced. However, Family Court vacated that order during the pendency of these proceedings and reverted to the prior August 2009 order.

disagreements that required police intervention.  This evidence clearly demonstrates that the parties' relationship had deteriorated to the point that they were no longer able to cooperate for the benefit of the children and, thus, the requisite change in circumstances had occurred (see Matter of Virginia C. v Donald C., 114 AD3d 1032, 1033 [2014]; Nolan v Nolan, 104 AD3d 1102, 1104 [2013]; Matter of Williams v Williams, 66 AD3d 1149, 1150-1151 [2009]).

Turning to the best interests of the children, factors to be taken into account include "the parents' ability to maintain the stability of the children, their respective home environments, past performance, relative fitness, ability to provide for the overall well-being of the children and willingness to foster a positive relationship with the other parent" (Matter of LaFountain v Gabay, 69 AD3d 994, 995 [2010]; see Matter of Blagg v Downey, 132 AD3d 1078, 1079-1080 [2015]; Matter of Parchinsky v Parchinsky, 114 AD3d 1040, 1041-1042 [2014]).  The effect of domestic violence on the children's best interests must also be taken into account (see Matter of Brown v Akatsu, 125 AD3d 1163, 1165 [2015]; Matter of Chris X. v Jeanette Y., 124 AD3d 1013, 1014 [2015]).  Several witnesses described incidents when the father had behaved aggressively or violently toward the children or other people in the children's presence. Family Court credited the mother's testimony that the father had pushed the older child to the ground several times while attending a football game and, on another occasion, had engaged in domestic violence toward the mother in the children's presence that bruised her arm, caused $1,600 in damage to her vehicle, and resulted in an order of protection against the father.  There was also testimony that, in September 2011, the father tried to force one of the children to sit with him rather than the mother at a football game by shouting and swearing at the child and "grabb[ing]" his arm; the police were called and the father was thereafter convicted of disorderly conduct.  A child protective services caseworker for the Broome County Department of Social Services testified that she investigated this incident pursuant to Family Ct Act § 1034 and indicated a report for inadequate guardianship, although she acknowledged on cross-examination that the equivalent child protective agency in Pennsylvania had found

the report to be unsubstantiated.  She stated that the children told her that they did not want to see the father, that he was "mean" and that he often hit them.  Several witnesses likewise testified that the children did not want to visit with the father and refused to do so after the September 2011 incident.  The mother testified that the father did not see or communicate with the children after this incident, stopped attending their school and athletic events, and did not contact them at Christmas.  She further testified that when the father had scheduled parenting time on Wednesday nights with the children under a September 2010 order that was later vacated, he refused to exercise the weeknight visits because "it was a waste of his time."

The father provided contrary testimony.  He stated, among other things, that the two children frequently had physical fights with each other and that he had been trying to pull the children apart when the mother saw him apparently pushing the older child to the ground.  He further testified that he had not been as aggressive or violent in the other incidents as the mother's witnesses claimed, wanted to spend as much time with the children as possible, did not want supervised visitation, and had failed to exercise the Wednesday night visits only because the distance between his home and the mother's home made them impractical.  He acknowledged, however, that he had not been attending supervised visits that were awarded to him under a temporary order in effect at the time of the hearing.  The father's girlfriend and a teenager who was one of several children residing in the father's home testified in support of the father and described his home as stable, loving and free of violence.  However, this Court defers to Family Court's credibility assessments (see Matter of Kimberly CC. v Gerry CC., 86 AD3d 728, 730-731 [2011]) and, here, we find a sound and substantial basis in the record for the determination that it was in the children's best interests to award sole custody to the mother and to limit the father's parenting time to weekly supervised visits (see Matter of Rosario WW. v Ellen WW., 309

AD2d 984, 986-987 [2003]).[2]

Family Court did not err in denying the father's motion for renewal, a rehearing and recusal. To prevail upon a motion for renewal, a party must demonstrate the existence of "newly-discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial" (CPLR 5015 [a] [2]). Here, the father argued that the court relied upon the caseworker's indicated child protective report of inadequate guardianship arising from the September 2011 incident, but that this report was subsequently overturned upon the father's administrative appeal. However, assuming without deciding that the administrative reversal — which did not occur until after the hearing and, therefore, was not in existence at that time — constitutes newly-discovered evidence for this purpose (see Matter of Monasterska v Burns, 121 AD3d 902, 902 [2014]; Pezenik v Milano, 137 AD2d 748, 748-749 [1988], lv dismissed 72 NY2d 909 [1988]), the father did not meet his burden to prove that the result of the proceedings would probably have been different if the reversal had been introduced during the hearing. The record demonstrates that the court did not rely solely or even primarily upon the report in evaluating the underlying incident. Instead, among other things, the court heard direct testimony describing the event from witnesses who were present and received into evidence a photograph of the father holding the child's arm taken at the scene, as well as the certificate of conviction reflecting the father's conviction for disorderly conduct arising from the incident. Thus, the indicated report "played only a de minimus, secondary role" in the court's determination (Matter of Richard SS., 55 AD3d 1001, 1002 [2008]). We find no abuse of discretion in the denial of the father's motion for renewal and a new hearing (see Matter of Troy SS. v Judy UU., 69 AD3d 1128, 1134-1135 [2010], lv dismissed and denied 14 NY3d 912 [2010]; Matter of Jonathan B., 11 AD3d

---

[2] Although not dispositive, the attorney for the children, who represented them both in Family Court and upon appeal, supported the court's custody and visitation determinations.

290, 290 [2004]; <u>see also</u> <u>Matter of Jennifer G. v Benjamin H.</u>, 84 AD3d 1433, 1436 [2011]), nor did the court abuse its discretion in refusing to recuse itself (<u>see</u> <u>Matter of Adams v Bracci</u>, 100 AD3d 1214, 1215-1216 [2012]; <u>Matter of Barney v Van Auken</u>, 97 AD3d 959, 960 [2012], <u>lv denied</u> 20 NY3d 856 [2013]).

Peters, P.J., Rose, Lynch and Clark, JJ., concur.

ORDERED that the orders are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court