*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 19, 2017        520294B
_____

In the Matter of CHRISTOPHER P.
   DRISCOLL,
                 Respondent,

    v                                   MEMORANDUM AND ORDER

AMBER N. OURSLER,
                 Appellant.

(And Other Related Proceedings.)
_____

Calendar Date:  November 18, 2016

Before:  Peters, P.J., McCarthy, Egan Jr., Lynch and Devine, JJ.

_____

    Michelle I. Rosien, Philmont, for appellant.

    Karen L. Howe, Cortland, for respondent.

    Elizabeth Aherne, Ithaca, attorney for the child.

_____

Lynch, J.

    Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered October 6, 2014, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

    Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a daughter (born in 2007).  The parents lived and raised the child together in a home owned by the father for approximately three years.  In December 2010, the mother moved out, leaving the child with the

father.   Thereafter, the parties continued a platonic relationship, cooperatively scheduling parenting time around their work schedules, vacationing together with the child and often socializing together with their friends.  They continued to share nearly equal parenting time until approximately December 2012, when the father began a new relationship.  At that time he decided that he "couldn't continue in the sort of interaction that was happening with [the mother]."  In May 2013, the father petitioned Family Court for joint legal and primary physical custody of the child.  The parties continued to share nearly equal parenting time pursuant to an unstructured schedule, albeit with some increasing discord.

On July 4, 2013, while the child was in the father's care, the mother and her paramour visited a friend at her home on the St. Lawrence River.  The three were drinking and, according to the friend's testimony, also using cocaine throughout the day. Early the next morning, the mother and her paramour began arguing and there was significant property damage.  The friend testified that the mother was acting erratically, the police were summoned and the mother was transported to the hospital.  She was released the next day to her father's care.  Following this event, Family Court awarded the father temporary sole custody and physical placement of the child with supervised parenting time to the mother.

From August 2013 through August 2014, the mother filed six applications seeking to expand her parenting time, alleging that the father had violated an order of custody and that he was allowing third parties to watch the child during his custodial time.  Also during this period, the father filed an order to show cause alleging that the mother had violated a custodial order, and the attorney for the child filed an application seeking to remove one of the individuals who had been deemed appropriate to supervise the mother's parenting time.  In response to these applications, Family Court issued eight interim orders that, among other things, identified the individuals permitted to supervise the mother's parenting time, directed where the supervised parenting time could occur and who could transport the child to and from the mother's supervised parenting time, directed the mother to undergo a drug and alcohol evaluation and

to participate in all recommended counseling, and, in July 2014, allowed the mother to have unsupervised overnight parenting time. During the pendency of these applications and interim orders, Family Court heard testimony at a fact-finding hearing held during 11 days over a span beginning on October 2, 2013 and continuing until August 27, 2014.  At the conclusion of the hearing, the court awarded sole legal and physical custody of the child to the father and parenting time to the mother during alternate weekends, one evening per week, two weeks of summer vacation and designated time during holidays.  The court also prohibited, among other things, the mother from "post[ing] on Facebook, Twitter, or any other social media [s]ite any mention" of the child, the father "or any members of their household." The mother now appeals.

"When making an initial custody determination, the court must focus on the best interests of the child, which involves consideration of factors including the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (Matter of Basden v Faison, 141 AD3d 910, 910-911 [2016] [internal quotation marks, brackets and citations omitted]).  An award of joint legal custody may not be appropriate where the parents are unable to "effectively and directly communicate with one another to care for the child's needs" (Matter of David J. v Leeann K., 140 AD3d 1209, 1211 [2016]).  "We accord great deference to Family Court's factual findings and credibility determinations given its superior position to observe and assess the witnesses' testimony and demeanor firsthand, and will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Daniel TT. v Diana TT., 127 AD3d 1514, 1515 [2015] [citations omitted]).

We agree with the mother that some of Family Court's factual findings lack a sound and substantial basis in the record.  Nevertheless, we find that the extensive record is sufficiently complete to allow us to exercise our authority — which in custody matters is as broad as Family Court's — to modify the custodial award, as necessary, without remitting to

that court (see Matter of Gentile v Warner, 140 AD3d 1481, 1483 [2016]).  It appears to be undisputed that the mother was the child's primary caretaker when the parties lived together.  After they separated, it was the mother who typically took the child to the doctor and arranged for her to attend preschool.  Once the parties attempted to formalize a parenting schedule, their initially cooperative parenting relationship deteriorated quickly.  The mother argued that the father often denied her access by limiting her parenting time and nightly phone calls to the child, and the father claimed that the mother frequently chose not to exercise her right to parenting time.  Each party argued that the other believed that he or she could control and alter the parenting schedule at his or her convenience.  Although Family Court seemed to focus on the mother's behavior, the record reveals that the father was often similarly hostile, disrespectful and manipulative.  Further, both parties were distrustful, prone to gamesmanship and habitually sought law enforcement to aid resolution of their disputes.

Given the evidence of mutual hostility, we find that the record amply supports Family Court's determination that joint custody was not feasible (see Matter of David J. v Leeann K., 140 AD3d at 1211; Bowman v Engelhart, 112 AD3d 1187, 1188 [2013]).  Further, while we do not find record support for each of the court's factual findings, we do find sound and substantial support for the court's determination to award the father primary physical custody.  Notably, the mother consistently denied using cocaine during the July 2013 weekend even after she tested positive for the drug.  As disturbing as that incident was, we are mindful that the mother did submit to a drug and alcohol evaluation and willingly participated in all of the recommended group and individual counseling before being discharged, with no recommendation for further treatment.  While it appears both parties engaged in an active social life, the mother's lifestyle was less stable than the father's.  Notably, she changed jobs a number of times, did not have stable housing and, in August 2014, she did not have transportation.  By comparison, the father had been at the same job for more than five years, had relatively stable housing and was living with his paramour and their newborn child.  We do not doubt that the mother loves the child and wants to provide a stable home, but deferring to the court's

credibility assessments, we find that the record supports the court's determination that it was in the child's best interests to award the father sole legal and primary physical custody (see Matter of Smithey v McAbier, 144 AD3d 1425, 1426 [2016]; Matter of Daniel TT. v Diana TT., 127 AD3d at 1515; Matter of Benjamin v Lemasters, 125 AD3d 1144, 1145 [2015]).

Upon our review of the record and exercising our broad authority, we further conclude that the child's interests will best be served by awarding the mother additional parenting time (see Bowman v Engelhart, 112 AD3d at 1189).  In our view, Family Court's award of parenting time one Tuesday evening from 4:00 p.m. to 7:00 p.m. and on alternate weekends from Friday at 5:00 p.m. until Sunday at 7:00 p.m. fails to provide the mother and child a sufficiently meaningful opportunity to continue to develop their close relationship.  We thus modify the order to add parenting time on each Thursday evening from 4:00 p.m. to 7:00 p.m., provided that the mother's work schedule permits such parenting time.  If not, the parties are directed to select another day to allow the mother to have at least three additional hours of parenting time each week.  We further find that the mother shall be entitled to additional parenting time during the one-week school vacation periods in February, April and December. During each of these weeks, the mother shall be entitled to overnight parenting time from Tuesday at 4:00 p.m. to Wednesday at 7:00 p.m.

Next, we find that Family Court's order must be modified to allow the mother to have unrestricted access to all of the child's educational and medical records.  The father shall keep the mother informed of — and the mother shall be permitted to attend — all appointments, meetings and school events regarding the child.  Finally, while we discern no error in Family Court's determination that the father was permitted to monitor the mother's telephone calls with the child, we do not believe that the broad restriction on the mother's social media activity was warranted.  Giving deference to the court's credibility assessments, the mother had a history of disparaging the father and his paramour on social media, but there was no evidence of inappropriate use with regard to the child.  Accordingly, we modify the prohibition by limiting it to communications regarding

the father, the paramour or their child.  In general, we trust that the parties will learn to exercise appropriate and respectful use of social media.

We have considered the parties' remaining contentions and find them to be without merit.

Peters, P.J., McCarthy, Egan Jr. and Devine, JJ., concur.

ORDERED that the order is modified, on the law and the facts, without costs, by (1) directing petitioner to provide respondent with any and all paperwork necessary to allow her to access the child's educational and medical records, (2) adding additional parenting time to respondent as set forth in this Court's decision and (3) expanding respondent's use of social media as set forth in this Court's decision, and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court