■ In the Matter of ADAM E., Appellant, v HEATHER F., Respondent. (Proceeding No. 1.) In the Matter of HEATHER F., Respondent, v ADAM E., Appellant. (Proceeding No. 2.) [56 NYS3d 380]—

Clark, J. Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered September 28, 2015, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' children.

Adam E. (hereinafter the father) and Heather F. (hereinafter the mother) are the parents of two children (born in 2012 and 2013). In September 2013, the parties and the children moved to North Carolina to live with the children's maternal grandparents. However, the father returned to New York three months later, while the mother and the children remained in North Carolina. Shortly thereafter, in February 2014, the father filed a Family Ct Act article 6 petition seeking custody of the children, and the mother filed a competing custody petition. Following a fact-finding hearing, Family Court granted the mother sole legal and primary physical custody of the children and, among other things, directed that the father have supervised parenting time with the children four times per year, once during each season, for a period of at least two or three consecutive nights. The father now appeals.

In child custody cases, the paramount concern is the best interests of the children, and courts must assess which custody arrangement will "best promote [the children's] welfare and happiness" (*Eschbach v Eschbach*, 56 NY2d 167, 171 [1982] [internal quotation marks and citations omitted]; *see S.L. v J.R.*, 27 NY3d 558, 562 [2016]; *Matter of Kayla Y. v Peter Z.*, 125 AD3d 1126, 1127 [2015]). In fashioning a child custody arrangement, courts consider a variety of factors, including the quality of each home environment and each parent's relative fitness and ability to provide for the overall well-being of the children, past performance and willingness to foster the children's relationship with the other parent (*see Matter of Driscoll v Oursler*, 146 AD3d 1179, 1181 [2017]; *Matter of Smithey v McAbier*, 144 AD3d 1425, 1425 [2016]; *Matter of Rosetta BB. v Joseph DD.*, 125 AD3d 1205, 1206 [2015]), as well as the effect that any domestic violence may have on the children (*see Matter of Kylene FF. v Thomas EE.*, 137 AD3d 1488, 1490 [2016]; *Matter of Brown v Akatsu*, 125 AD3d 1163, 1165 [2015]; *Matter of Chris X. v Jeanette Y.*, 124 AD3d 1013, 1014 [2015]). Where the parents are unable to "effectively and directly communicate with one another to care for the child[ren]'s needs," an award of joint legal custody may not be feasible or appropriate (*Matter of David J. v Leeann K.*, 140 AD3d 1209, 1211 [2016]; *see Matter of Driscoll v Oursler*, 146 AD3d at 1181). Given that Family Court "is in the best position to evaluate the parties' testimony, character and sincerity[,] . . . its factual findings are accorded great deference and will not be disturbed[,] unless they lack a sound and substantial basis in the record" (*Matter of Fletcher v Young*, 281 AD2d 765, 767 [2001] [citation omitted]; *see Matter of Lilly NN. v Jerry OO.*, 134 AD3d 1312, 1313 [2015]; *Rose v Buck*, 103 AD3d 957, 958 [2013]).

Here, there is a sound and substantial basis in the record to support Family Court's determination to grant the mother sole legal and primary physical custody of the children. The record evidence demonstrated that the mother was the primary caretaker of the children. Both the maternal grandmother and the maternal stepgrandfather testified that, while the parties were living with them, the mother would primarily feed, change and care for the children and that, although the father would watch the children alone for a period of roughly two hours, he would refuse to care for the children when the mother was home. They testified that they often heard the father yelling profanities at the mother and heard him state that the children were the mother's "problem." The mother testified that the father would often call or send text messages to her while she was at work, stating that she needed to find child care

because he was not going to watch the children anymore. The mother further stated that, on two occasions, the father summoned her home from work for an "emergency" when, in fact, there was no emergency at all.

Moreover, the mother testified that, since their separation in December 2013, her relationship with the father was such that they were unable to effectively communicate or cooperate with each other regarding the children. The mother testified to several instances in which the father was physically abusive toward her, including one instance when she was pregnant. The mother also stated that the father would direct profane and derogatory comments at her and otherwise subject her to emotional and verbal abuse in the presence of the children. According to the mother, she was fearful of the father as a result of these events. While the father denied any acts of physical, emotional or verbal abuse against the mother, Family Court found the father's testimony on this subject to be "evasive" and expressly credited the mother's accounts of domestic violence. According great deference to Family Court's credibility assessments, we find that the record evidence amply supports the conclusion that joint legal custody was not feasible and that the children's best interests would be served by granting the mother sole legal and primary physical custody of the children (see Matter of Kylene FF. v Thomas EE., 137 AD3d at 1490-1491; Matter of Defayette v Defayette, 28 AD3d 820, 821-822 [2006]). Notwithstanding this determination, we find no basis in the record to deny the father access to the children's medical and educational records, and modify Family Court's order to permit the father to obtain such records, at his own effort and expense.*

As for the father's challenge to his supervised parenting time, "[t]he best interests of the children generally lie with a healthy, meaningful relationship with both parents" (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]; see Matter of Spoor v Carney, 149 AD3d 1209, 1211 [2017]). Accordingly, unless parenting time with the noncustodial parent would be detrimental to the children's welfare, Family Court must structure a schedule that results in frequent and regular access by the noncustodial parent (see Matter of Staff v Gelunas, 143 AD3d 1077, 1078 [2016]; Matter of Harrell v Fox, 137 AD3d 1352, 1355 [2016]). Supervised parenting time may be justified where unsupervised time with the children could be "detrimental to the child[ren]'s safety" as a result of the parent's in-

---

* We note that, at oral argument, the mother did not oppose the father having access to the children's medical and educational records.

ability or unwillingness " 'to discharge his or her parental responsibility properly' " (*Matter of Taylor v Fry*, 63 AD3d 1217, 1218-1219 [2009], quoting *Matter of Kathleen OO.*, 232 AD2d 784, 786 [1996]; *see Matter of Raychelle J. v Kendell K.*, 121 AD3d 1206, 1207-1208 [2014]). The determination of whether parenting time is supervised or unsupervised is committed to the sound discretion of Family Court and will not be disturbed if supported by a sound and substantial basis in the record (*see Matter of Burrell v Burrell*, 101 AD3d 1193, 1194 [2012]; *Matter of Taylor v Fry*, 47 AD3d 1130, 1131 [2008]). As for the frequency of parenting time, Family Court is afforded broad discretion in fashioning a parenting time schedule in the best interests of the children (*see Matter of Finkle v Scholl*, 140 AD3d 1290, 1292 [2016]; *Matter of Adam MM. v Toni NN.*, 124 AD3d 955, 956-957 [2015]).

Here, the record evidence established that, in addition to perpetrating acts of domestic violence against the mother, the father would frequently become frustrated with the children when he was caring for them and that, as a result, he would yell and curse at the children. The maternal grandmother and the maternal stepgrandfather separately testified that the father would become impatient while feeding baby food to one of the children and that they regularly observed the father strap the youngest child into a car seat and place the car seat in front of the television. According to the maternal grandmother and maternal stepgrandfather, the father did this so that he would not have to chase the crawling toddler around. In view of all of the evidence, and according deference to Family Court's credibility assessments, we find that Family Court's determination to award the father supervised parenting time with the children is supported by a sound and substantial basis in the record, and we will not disturb it (*see Matter of Christine TT. v Gary VV.*, 143 AD3d 1085, 1086 [2016]; *Matter of Taylor v Fry*, 63 AD3d at 1219). Nor will we disturb Family Court's discretionary determination to award the father parenting time four times per year, given that the father chose to move back to New York, rather than establish his own residence in North Carolina, and that it would not be in the children's best interests to require them to regularly make the lengthy trip from the mother's residence in North Carolina to the father's residence in New York (*see Matter of Molina v Lester*, 84 AD3d 1462, 1463-1464 [2011]; *Matter of Kowalsky v Converse*, 79 AD3d 1310, 1312 [2010]).

To the extent not specifically addressed herein, the father's remaining contentions have been examined and found to be without merit.

Garry, J.P., Lynch, Rose and Aarons, JJ., concur. Ordered that the order is modified, on the law, without costs, by directing that Adam E. shall have direct access to the children's medical and educational records upon request from the medical and educational providers, and, as so modified, affirmed.