Matter of Zaida DD. v Noel EE. (2019 NY Slip Op 53949)





Matter of Zaida DD. v Noel EE.


2019 NY Slip Op 53949


Decided on November 27, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 27, 2019

527273

[*1]In the Matter of Zaida DD., Appellant,
v
Noel EE., Respondent.

Calendar Date: October 15, 2019

Before: Lynch, J.P., Clark, Devine and Pritzker, JJ.


Christopher Hammond, Cooperstown, for appellant.
Veronica Gorman, Binghamton, attorney for the child.

Veronica Gorman, Binghamton, attorney for the child.



Lynch, J.P.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered August 2, 2018, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2011). Since the end of the parties' relationship in 2015, the parties have been following an informal parenting time schedule. Beginning in March 2017, the father had parenting time with the child alternate weekends and two overnights during each week. In April 2018, the mother commenced this custody proceeding. After a hearing, Family Court awarded the parties joint legal custody of the child, with parenting time to the father on alternate weekends from Friday after school to Monday morning and overnight visits every Tuesday and Thursday. The mother appeals.
When making an initial custody determination, Family Court's primary focus is the best interests of the child, "which requires an analysis of such factors as each parent's relative fitness and past performance, ability to provide for the child's well-being and furnish a stable home environment and willingness to foster relationships with the other parent" (Matter of Amanda YY. v Ramon ZZ., 167 AD3d 1260, 1261 [2018] [internal quotation marks, brackets and citation omitted]; see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]). The court is afforded broad discretion in determining the best interests of the child, "and its determination will not be disturbed unless it lacks a sound and substantial basis in the record" (Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1557 [2019]).
At the fact-finding hearing, the mother testified that the child has resided with her since the parties separated in September 2015. It is not disputed that the father regularly spent time with the child after the parties separated. In March 2017, the child began spending overnights with the father every other weekend and on Tuesday and Wednesday evenings. When school started in September 2017, the father drove from his house to the mother's house — approximately 15 minutes away — to drop the child off early in the morning on his way to work following his midweek parenting time. The mother, who worked from 9:00 a.m. to 5:00 p.m. each week day, fed the child breakfast and then put him on the bus to go to school. After school, the child took a bus to a babysitter's house, located about five minutes from the mother's house. The babysitter helped the child with his homework and gave the child a snack before the mother picked him up at about 5:30 p.m. On days that the child was scheduled to be with the father, the father picked him up at the bus stop after school at 3:30 p.m.
The mother testified that once school started, she noticed that the child was tired and irritable when the father dropped him off in the mornings after his midweek parenting time. She further testified that she noticed that the child had more tantrums and would "blow[ ] up" in response to disagreements after spending parenting time with his father. After the child reported that he had learned how to play beer pong, the mother was also concerned that the father was regularly taking the child to his motorcycle club. The mother also testified that she believed that the father spoke to the child about proceedings in court and recalled a time that the father took the child to the emergency room without telling her.
The parties do not dispute that they primarily communicate about the child through text messaging. The father, who was not represented, testified that he works from 7:00 a.m. to 3:20 p.m. or 3:30 p.m. each day, so he is able to pick the child up at the bus stop after school. After school, the two do homework together and the father would also take the child to events at his stepdaughter's school. According to the father, the child wakes up every morning at 6:00 a.m., including on weekends. He disputed much of the mother's testimony about his involvement in the child's life, but conceded that the two were unable to agree on where to send the child to summer camp. He testified that the child did not spend time at the motorcycle club and agreed, when asked, that he would not take the child there in the future. As to the trip with the child to the emergency room, the father explained that it was late in the evening, the child was not in any danger and he planned to tell the mother in the morning. He did not explain why the mother heard about it through social media first.
The mother challenges the award of joint legal custody. Generally, joint legal custody is the preferred arrangement, unless the evidence demonstrates that the parties are unable to work together and communicate cooperatively (see Hassan v Barakat, 171 AD3d 1371, 1373 [2019]; Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2014]). As noted by Family Court, the parties are united in their dedication to the child, and their goal is to develop a schedule that is in his best interests. Further, the parties are communicating, albeit primarily by text message. Like Family Court, we find the parties' effort to develop a workable schedule commendable, as they were navigating the child starting school and the "bumps in the road" precipitated by the father's new marriage and the mother's recent engagement. Under the circumstances, we find a sound and substantial basis in the record to support the award of joint legal custody (see Matter of Lilly NN. v Jerry OO., 134 AD3d 1312, 1315 [2015]; compare Matter of Driscoll v Oursler, 146 AD3d 1179, 1181 [2017]).
The mother also contends — joined by the attorney for the child — that Family Court should not have awarded the father overnight parenting time during the week. Generally, because Family Court has broad discretion to develop a parenting schedule that is in the child's best interests, we will not intervene, as long as the schedule finds sound and substantial support in the record (see Matter of Eliza JJ. v Felipe KK., 173 AD3d 1285, 1286 [2019]). "The best interests of the child[] generally lie with a healthy, meaningful relationship with both parents" (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016]) and, as long as there is no evidence that the child is being harmed, the court "is required to structure a schedule which results in frequent and regular access by the noncustodial parent" (Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019] [internal quotation marks and citations omitted]).
At the fact-finding hearing, the parties' testimony was at odds as to whether the midweek visitation was having a negative impact on the child. Like Family Court, we discern no basis in this record for a finding that the child suffered any harm resulting from the overnight visitation during the week (compare Matter of Johnpeer v Williams, 74 AD3d 1584, 1585-1586 [2010]). Deferring to Family Court's credibility assessments (see Matter of Williams v Patinka, 144 AD3d at 1433-1434), we find that the court's determination to continue the father's midweek overnight parenting time was supported by a sound and substantial basis in the record.
Clark, Devine and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.