## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  October 20, 2016    521680
_____

In the Matter of ZAKARIAH SS.,
     Respondent,

  v           MEMORANDUM AND ORDER

TARA TT.,
     Appellant.

(And Another Related Proceeding.)
_____


Calendar Date:  September 6, 2016

Before:  Peters, P.J., McCarthy, Lynch, Rose and Clark, JJ.

_____

  Mack & Associates PLLC Albany (Barrett D. Mack of counsel), for appellant.

  Max Zacker, Catskill, for respondent.

  John Kosich, Greenville, attorney for the child.

_____

McCarthy, J.

  Appeal from an order of the Family Court of Greene County (Tailleur, J.), entered September 4, 2015, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

  Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a daughter (born in 2004).  By a June 2013 stipulated order, the parties had joint legal and physical custody of the child with parenting time on alternating weeks during the school year and three weeks of the

summer with each parent.  In June 2014, after having decided to relocate to North Carolina, the father filed a petition to modify an existing custody order, requesting joint legal custody of the child with primary physical custody awarded to the mother.  Two months later, while the child was on a three-week agreed upon visit with the father in North Carolina, the mother filed a petition to modify the existing custody order, requesting immediate temporary sole legal and physical custody of the child.  Subsequently, in November 2014, the father filed an amended petition for modification of the existing custody order, requesting sole legal and physical custody of the child in North Carolina with visitation to the mother, averring that, based upon his own experience with the child and pursuant to a forensic custody evaluation, the mother had alienated the child from the father and failed to foster any relationship between them.  Following a fact-finding hearing, Family Court found a change in circumstances based on both the father's proposed move and a breakdown in the relationship between the child and the father.  In its order, the court, among other things, granted the father's petition for sole legal and physical custody of the child and denied the mother's petition for the same.  The mother now appeals.

The record contains a sound and substantial basis to support the determination awarding the father sole legal and physical custody of the child.[1]  Within our paramount consideration of the evidence as it reflects on the best interests of a child, we have recognized that evidence that a parent's intentional efforts to alienate a child from another parent is so inimical to a child's interests as to raise a strong probability that the offending parent is unfit to be a custodial parent (see Matter of Gerber v Gerber, 133 AD3d 1133, 1137 [2015], lv denied 27 NY3d 902 [2016]).  At trial, the parties presented two irreconcilable pictures of their parenting.  Either, as the mother contended, the father had been and continued to be severely physically abusive to the child, or, as

---

[1]  The mother does not challenge Family Court's determination that there was a change in circumstances warranting inquiry only into the best interests of the child.

the father contended, the mother had engaged in a systematic and successful effort to program the child to hate and fear the father while coaching her to falsely accuse the father of such abuse.

In resolving these competing narratives, Family Court relied heavily on the testimony of a licensed psychologist who had performed a custody evaluation. That psychologist opined that the child had been "brainwashed, coached and rehearsed" by the mother. In support of this conclusion, the psychologist described a litany of ways in which the child acted in a manner consistent with a child of that age who had been coached to accuse an adult of abuse that had not actually occurred. Examples of this included that the child was unwilling to acknowledge any positive experiences that she had with the father, that she arrived at their sessions with a "laundry list" of accusations against the father, that she used sophisticated language to describe the alleged abuse and that she could not offer further detail to describe more "global" statements that she had previously made about the alleged abuse.

Moreover, the psychologist found explanations that the child gave for other claims that she made to be irrational. For example, when asked to give an example of one of the "very strict rules" that the child claimed the father had for her, the child explained that she was not allowed to hit her brothers. When asked to explain why she believed her father had "pull[ed] her down the steps" — one of her accusations of abuse — the child explained that he had taken such action because she had been "doing a puzzle." On this issue, the psychologist explained, "obviously [the child's explanation] was an unusual response because it was a fabricated allegation, so there is no rational response." Moreover, the psychologist described drastically different attitudes that the child would exhibit in regard to her father on different occasions; negative attitudes toward the father appeared to highly correlate with the actual presence of the mother or the mother's recent interactions with the child.

The psychologist's evaluation of the mother gave her further reasons to discount the allegations of abuse. The mother was unable to produce any records, such as medical records or

photographs, that would confirm her or the child's allegations of abuse by the father.  Further, the psychologist found incredible some of the mother's explanations for why no such evidence existed.  For example, the mother asserted that the reason she did not report the allegedly ongoing and serious abuse of the child was because of the fact that she did not know of the existence of a Child Protective Services hotline.[2]  In addition, the psychologist noted that she had interviewed collateral contacts, particularly school employees who worked with the child and who the child had indicated were aware of the father's abuse.  Those contacts contradicted the child's claim that she had disclosed any abuse to them, one specifically emphasizing that, as a mandated reporter, she would have been legally required to report such a disclosure if it had in fact occurred.  Finally, after evaluating the mother and the child together, the psychologist opined that their interactions established that the child was placed in the position of having to care for the mother's feelings.  The psychologist reached a largely opposite conclusion regarding the father, opining that, although he exhibited a lack of communication with the mother, he did not engage in harmful alienating behavior.

Considering the evidence as a whole and particularly considering the psychologist's work with all of the parties and her reasoned explanation of how numerous factors led her to conclude that there was "no credible evidence of abuse" by the father but that there was evidence of "coaching, coercion and brainwashing" of the child by the mother, we find no reason to depart from Family Court's determination to credit the psychologist.  According appropriate deference to that credibility determination, we find a sound and substantial basis in the record to support the conclusion that awarding the father sole custody of the child in North Carolina was in the child's best interests (see Matter of Gerber v Gerber, 133 AD3d at 1138-1139; Robert B. v Linda B., 119 AD3d 1006, 1008-1009 [2014],

---

[2]  The psychologist noted that, in assessing the credibility of such a claim, she considered reports establishing that the mother had previously contacted Child Protective Services in 2004.

lv denied 24 NY3d 906 [2014]; Matter of Burola v Meek, 64 AD3d 962, 966 [2009]; Matter of Whitley v Leonard, 5 AD3d 825, 827 [2004]).

The mother's contention that Family Court improperly acted as an advocate during the trial is unpreserved for our review, as she made no objections to the court's actions that she now complains of, and – contrary to the mother's contention – a review of the record does not support the conclusion that the court engaged in such extreme participation as to render objections unnecessary for the purposes of preservation (see Matter of Shannon F., 121 AD3d 1595, 1596 [2014], lv denied 24 NY3d 913 [2015]; Matter of Keaghn Y. [Heaven Z.], 84 AD3d 1478, 1479-1480 [2011]; see generally People v Charleston, 56 NY2d 886, 888 [1982]). Likewise, the mother never sought the disqualification of the aforementioned psychologist at a time where the court could have assigned a different custody evaluator,[3] and, thus, the contention that she ought to have been disqualified is also unpreserved for our review (compare Reback v Reback, 41 AD3d 814, 816 [2007]; Roundpoint v V.N.A., Inc., 207 AD2d 123, 126 [1995]).

Nonetheless, Family Court erred by delegating the determination of the mother's visitation to the child's counselor. A court cannot delegate its authority to determine visitation to a mental health professional (see Matter of Holland v Holland, 92 AD3d 1096, 1096 [2012]; Matter of Steven M. [Stephvon O.], 88 AD3d 1099, 1101 [2011]). Accordingly, we remit for further proceedings to establish the mother's visitation (see Matter of Alisia M. [Sean M.], 110 AD3d 1186, 1188 [2013]; Matter of Holland v Holland, 92 AD3d at 1097).

Finally, we reject the mother's contention that the attorney for the child was required to advocate for the child's stated wishes to be in the custody of the mother. We find ample evidence in the record that the mother caused severe emotional

---

[3] More generally, the mother never sought the disqualification of the psychologist at any point prior to this appeal.

distress to the child by her ongoing attempts to alienate the child from the father.  If the child's professed wishes were acceded to, that distress was likely to continue and perhaps worsen.  Moreover, the child's purported wishes were likely to lead to the continuation and amplification of severe and unwarranted damage to the child's relationship with the father.  In such circumstances, we find no fault in the attorney for the child's decision to advocate for a position contrary to the child's wishes, of which Family Court was aware, given that such wishes were "likely to result in a substantial risk of imminent, serious harm to [her]" (22 NYCRR 7.2 [d] [3]; see Matter of Viscuso v Viscuso, 129 AD3d 1679, 1681 [2015]).  Each of the mother's remaining contentions have been considered and have been found to be without merit.

Peters, P.J., Lynch, Rose and Clark, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as delegated to the child's counselor the determination as to respondent's visitation with the child; matter remitted to the Family Court of Greene County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court