Clark, J.
Appeal from an order of the Family Court of Fulton County (Skoda, J.), entered November 2, 2015, which granted petitioner’s applications, in four proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent is the father of Maximus K., Arianna K. and Sophia K. (born in 2011, 2012 and 2015, respectively) and a person legally responsible for the care of Emmanuel J., Phoenix J. and Eva K. (born in 2005, 2008 and 2010, respectively). The children, who all have the same mother, resided with respondent, their mother and their maternal and paternal grandmothers. On March 20, 2015, following observations of deplorable conditions in the family home, petitioner temporarily removed the children from the home on an emergency basis. That same day, petitioner commenced a neglect proceeding against respondent, alleging that the unsafe and unsanitary conditions in the home placed the children at imminent risk of harm to their physical, emotional or mental welfare. In April 2015, following improvements to the condition of the home, the children were returned. However, in May 2015, petitioner filed another neglect petition against respondent, alleging, among other things, that the unsafe and unsanitary conditions persisted in the home and that respondent had placed Sophia at risk of serious physical harm when he failed to immediately and appropriately respond to signs that she was in distress and having difficulty breathing.[1]
Following a fact-finding hearing, Family Court adjudged the children to have been neglected by respondent. The matter then proceeded to a dispositional hearing, which was conducted over two days. At the conclusion of the first day, Family Court temporarily placed the children in the care and custody of petitioner pending final disposition of the neglect petitions. Following the dispositional hearing, Family Court issued a dispositional order continuing the children’s placement in the care and custody of petitioner until the completion of a permanency hearing. Respondent appeals.
On appeal, respondent curiously does not advance a wholesale challenge to Family Court’s determination that respon *1294 dent had neglected all of the children because the deplorable conditions in the family home created an imminent risk of harm to their physical and emotional well-being. Rather, respondent argues that a sound and substantial basis does not exist in the record to support Family Court’s individual findings that he failed to “comprehend and adequately address the needs” of Phoenix and Sophia, thereby creating an imminent risk of harm to their physical and/or emotional safety.
“[A] party seeking to establish neglect must show, by a preponderance of the evidence, first, that [the] child [ren] ⅛ physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and[,] second, that the actual or threatened harm to the child [ren] is a consequence of the failure of the . . . caretaker to exercise a minimum degree of care in providing the child [ren] with proper supervision or guardianship” (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004]; see Family Ct Act §§ 1012 [f] [i] [B]; 1046 [b] [i]; Matter of Zackery D. [Tosha E.], 129 AD3d 1121, 1122 [2015]). A finding of neglect requires only an imminent threat of injury or impairment, not actual injury or impairment, and such threat may be established through a single incident or circumstance (see Matter of Cori XX. [Michael XX.], 145 AD3d 1207, 1207-1208 [2016]; Matter of Xavier II., 58 AD3d 898, 899 [2009]; Matter of Aiden L., 47 AD3d 1089, 1090 [2008]). In determining whether a caretaker has failed to exercise a minimum degree of care, his or her behavior “must be evaluated ‘objectively,’ in light of whether ‘a reasonable and prudent [caretaker would] have so acted, or failed to act, under the circumstances then and there existing’ ” (Matter of Rebecca KK., 51 AD3d 1086, 1087 [2008], quoting Nicholson v Scoppetta, 3 NY3d at 370; see Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011]). We will not disturb Family Court’s findings of fact if they are supported by a sound and substantial basis in the record (see Matter of Jeromy J. [Latanya J.], 122 AD3d 1398, 1398-1399 [2014], lv denied 25 NY3d 901 [2015]; Matter of Kaleb U. [Heather V. — Ryan U.], 77 AD3d 1097, 1098 [2010]).
Turning first to Phoenix, a social worker at Phoenix’s school testified that Phoenix “often” came to school “unkempt,” dressed in “ill-fitting” clothing or in clothes that were inappropriate for the weather and smelling of urine or body odor. She testified that “typically” Phoenix would be sent to the school nurse to address her hygiene and, depending on the circumstances, would be bathed, given appropriate clothing or directed to brush her teeth. School records confirmed that, throughout the 2014-2015 school year, Phoenix was sent to the nurse’s office to *1295 address, among other things, her “strong odor,” which was described in the records as a “recurrent issue.” The child’s doctor testified that Phoenix suffered from urinary incontinence and frequent urinary tract infections. The evidence also established that Phoenix had, on more than one occasion, been locked in her bedroom overnight, that she was therefore forced to urinate on the mattress where she slept and that the resulting mess would not be cleaned.
Further, the record demonstrated that Phoenix’s poor hygiene while in the care of respondent was negatively affecting her emotionally and academically. The school social worker testified that, in addition to missing school because she repeatedly had head lice, Phoenix would often cry when the issue of her hygiene was raised, state that she was not supposed to visit the nurse’s office and worry that she would get in trouble with respondent and her mother for doing so. In addition, the school social worker stated that faculty noticed a marked improvement in Phoenix’s demeanor, confidence and academic performance when she was in petitioner’s care, as opposed to respondent’s care. Together, the foregoing evidence clearly demonstrated that Phoenix’s poor hygiene was an ongoing issue, not an isolated incident, of which respondent was aware and failed to exercise a minimum degree of care. Thus, Family Court’s finding that respondent’s failure to “comprehend and adequately address the needs” of Phoenix created an imminent risk of harm to her physical and emotional safety is supported by a sound and substantial basis in the record (see Matter of David II., 49 AD3d 1093, 1094-1095 [2008]; Matter of Aiden L., 47 AD3d at 1090-1091).
As for Sophia, “[a] child can be declared to be neglected as a result of the failure of [his or her caretaker] to act when the [caretaker] knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child” (Matter of Alaina E., 33 AD3d 1084, 1086 [2006]; accord Matter of David II., 49 AD3d at 1094). Sophia’s pediatrician testified that Sophia has sleep apnea and hypox-emia, which require the use of an apnea monitor and oxygen therapy while she sleeps. Petitioner’s caseworker testified that, on Friday, May 8, 2015, she heard and observed Sophia struggling to breathe while she slept in a “bouncer chair” in the kitchen in view of respondent. The caseworker asserted that Sophia was not using her apnea monitor or oxygen and that this was not the first time that she had observed the child sleeping without her apnea monitor. She stated that, upon alerting respondent to Sophia’s distressed breathing, respon *1296 dent told her that Sophia had been seen by a doctor two days earlier. The caseworker testified that she had to insist that respondent call the doctor and that respondent ultimately relented. The caseworker stated, however, that she overheard respondent state, “CPS is here and they’re making me call you.” According to the caseworker, she had to “coach[ ]” respondent through the remainder of the call and insist that he request a same-day appointment to ensure that the child’s condition did not go untreated through the weekend. On cross-examination, respondent admitted that he did not notice Sophia’s labored breathing until the caseworker pointed it out. Sophia’s pediatrician testified that Sophia presented to his office in “acute respiratory distress” and that she could have died from this life-threatening condition if she had not been treated that day. The child was thereafter admitted to the hospital for treatment of pneumonia, RSV virus and difficulty breathing. In our view, the foregoing evidence was sufficient to sustain Family Court’s finding that respondent “failfed] to comprehend and adequately address the needs of [Sophia so as] to avoid the risk of imminent danger or harm” (see Matter of Shannen AA. [Melissa BB.], 80 AD3d 906, 908 [2011], lv denied 16 NY3d 709 [2011]; Matter of Mary MM., 38 AD3d 956, 957 [2007]).
Respondent further argues that Family Court’s dispositional determination is not supported by a sound and substantial basis in the record.[2] “[A] dispositional order must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record” (Matter of Alaina E., 33 AD3d at 1087; accord Matter of Gloria DD. [Brenda DD.], 99 AD3d 1044, 1045 [2012]; Matter of Alexis AA. [John AA.], 97 AD3d 927, 929 [2012]). The record established that, despite the provision of in-home intensive prevention services to the family twice weekly, the home remained in an unsafe and unsanitary condition. As established by the evidence, the home continued to overwhelmingly smell of urine and, in addition to other unhygienic conditions, suffer from a cockroach infestation. The record further demonstrated that those of the children who attended school were repeatedly treated for head lice and that some of those children performed *1297 better academically when placed outside of the home. While there was some evidence that respondent had made efforts to ameliorate the state of the home, the record amply demonstrated that the home nonetheless continued to be an uninhabitable environment for the children. Accordingly, we find that Family Court’s dispositional determination is supported by a sound and substantial basis in the record (see Matter of Alexis AA. [John AA.], 91 AD3d 1073, 1074 [2012], lv denied 18 NY3d 809 [2012]).
Finally, inasmuch as respondent did not move for the removal of the attorney for the children, he failed to preserve his contentions that the attorney for the children improperly substituted her judgment for that of Phoenix and Emmanuel, that she should have withdrawn her representation of these two children when they expressed a desire to remain in the family home and that, overall, she failed to adequately represent the children (see Matter of Elniski v Junker, 142 AD3d 1392, 1393 [2016]; Matter of Swinson v Dobson, 101 AD3d 1686, 1687 [2012], lv denied 20 NY3d 862 [2013]; Matter of Juliet M., 16 AD3d 211, 212 [2005]; Matter of Nicole VV., 296 AD2d 608, 613 [2002], lv denied 98 NY2d 616 [2002]). Were such contentions properly raised in Family Court and, thus, preserved, we would find them to be without merit. While the attorney for the children has a duty “to advocate and express the children’s wishes to the court,” where, as here, “the children’s wishes would likely ‘result in a substantial risk of imminent, serious harm to the child[ren],’ ” the attorney for the children may advocate a position that is contrary to the children’s express wishes (Matter of Alyson J. [Laurie J.], 88 AD3d 1201, 1203 [2011], lv denied 18 NY3d 803 [2012], quoting 22 NYCRR 7.2 [d] [3]). Here, the attorney for the children repeatedly advised Family Court that Phoenix and Emmanuel wanted to stay in respondent’s home, but, as the record established that the condition of the home posed a substantial risk of imminent serious harm to them, she was justified in advocating that they remain in petitioner’s care (see 22 NYCRR 7.2 [d] [3]; Matter of Alyson J. [Laurie J.], 88 AD3d at 1203; cf. Matter of Zakariah SS. v Tara TT., 143 AD3d 1103, 1106-1107 [2016]). Further, under the circumstances of this case, the attorney for the children did not have an obligation to withdraw from her representation of Phoenix and Emmanuel once they expressed a desire to remain in the family home (see Matter of Justin A. [Derek C.], 133 AD3d 1106, 1108 [2015], lv denied 27 NY3d 904 [2016]; compare Matter of James I. [Jennifer I.], 128 AD3d 1285, 1286 [2015]) and, in all other respects, her representation of the children was meaningful and appropriate (see Matter of Gloria DD. [Brenda DD.], 99 AD3d at 1046-1047).
*1298 To the extent that we have not addressed any of the parties’ remaining contentions, they have been reviewed and found to be without merit.
McCarthy, J.P., Egan Jr., Lynch and Devine, JJ., concur.
Ordered that the order is affirmed, without costs.

. Petitioner filed separate neglect petitions against the mother in March 2015 and May 2015.

. Respondent also challenges the propriety of Family Court’s order temporarily placing the children in the care and custody of petitioner pending a final disposition of the neglect petitions. However, respondent did not appeal from this order and, in any event, any challenge to the temporary order was rendered moot upon the entry of the final dispositional order (see Matter of Alexis AA. [John AA.], 97 AD3d 927, 929 n 2 [2012]; Matter of Shalyse WW., 63 AD3d 1193, 1197 [2009], lv denied 13 NY3d 704 [2009]).