Matter of Patrick UU. v Frances VV. (2021 NY Slip Op 06733)





Matter of Patrick UU. v Frances VV.


2021 NY Slip Op 06733


Decided on December 2, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 2, 2021

532193 532921
[*1]In the Matter of Patrick UU., Respondent,
v
Frances VV., Appellant. (And Other Related Proceedings.)

Calendar Date:October 19, 2021

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and Colangelo, JJ.

Lindsay H. Kaplan, Kingston, for appellant.
Betty J. Potenza, Highland, for respondent.
Amy S. Ingram, Kingston, attorney for the child.



Lynch, J.
Appeals (1) from an order of the Family Court of Ulster County (McGinty, J.), entered October 2, 2020, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody, and (2) from an order of said court, entered January 19, 2021, which denied respondent's motion to vacate the prior order.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2007). A November 2017 consent order, entered while the father was incarcerated, awarded the mother sole custody of the child, with visitation and phone contact to the father. In December 2018, after the father was released from incarceration, he commenced the first of these proceedings seeking to modify the November 2017 consent order to grant him "full custody" of the child and access to the child's "[e]ducational, medical and[] [r]eligious records." In September 2019, the father filed an emergency modification petition, alleging that the child had been expelled from school because the mother refused to immunize him and that she did not have an appropriate plan for his education. Family Court issued several temporary orders in conjunction with the father's petitions, and the father filed violation and enforcement petitions based upon the mother's alleged noncompliance with the terms of the temporary orders. Meanwhile, the mother moved for recusal of the Family Court Judge assigned to resolve the matter, alleging that she had a federal lawsuit pending against him and that his prior rulings had caused irreparable damage to her. Family Court denied the mother's recusal motions.
A fact-finding hearing on the father's petitions was initially scheduled to commence on August 12, 2019. At that time, Family Court rescheduled the hearing to begin on January 27, 2020 to accommodate the mother's request for more time to retain counsel. The hearing began on January 27, 2020, with the mother appearing without counsel. At the conclusion of the second day of testimony on February 11, 2020, the court scheduled two additional days of testimony for February 18, 2020 and March 6, 2020, with the consent of all parties. The father's testimony was completed during the February 18, 2020 session, and the day ended while the mother was cross-examining one of the child's former teachers. When the proceedings resumed on March 6, 2020 at 2:00 p.m., the mother was not in attendance. After waiting over an hour, and with no word from the mother, the hearing resumed. After the attorney for the child (hereinafter AFC) completed her cross-examination of the teacher, the father called an assistant superintendent from the school, whose testimony was completed. As reflected in the court's decision and the briefs of the father and the AFC, the proof was closed and all parties, including the mother, submitted written closing statements.[FN1] Due to the COVID-19 pandemic, the Lincoln hearing [*2]that was initially scheduled for March 24, 2020 was cancelled. By order dated July 20, 2020, the court rescheduled the Lincoln hearing for August 13, 2020 and directed the mother to produce the child for the hearing. She failed to do so. Due to the mother's nonappearance, Family Court issued a written decision on September 30, 2020, with a corresponding order — entered October 2, 2020 — finding her in default. The October 2020 order, among other things, granted the father's modification petition, awarded him sole legal and physical custody of the child and set forth a schedule of visitation and custodial time for the mother.[FN2] The mother subsequently moved to vacate the default order, essentially seeking to reopen the hearing. In an order entered January 21, 2021, Family Court denied the mother's motion on both procedural and substantive grounds, finding that she failed to properly serve the father's attorney with the motion and, in any event, did not set forth a reasonable excuse for her default. The mother appeals from the October 2020 and January 2021 orders.
With respect to the appeal from the October 2020 order, the father and the AFC argue that the appeal must be dismissed because the order was properly entered on the mother's default. We are mindful that no appeal is permitted from an order entered upon a default and that the proper procedure requires a motion to vacate the default (see Matter of Deshane v Deshane, 123 AD3d 1243, 1244 [2014], lv denied 25 NY3d 901 [2015]). Considering the mother's extensive participation in the proceeding, we conclude e that this was not a default situation (see Matter of Amanda I. v Michael I., 185 AD3d 1252, 1253-1254 [2020]; Matter of Leighann W. v Thomas X., 141 AD3d 876, 877 [2016]). The mother made an opening statement, extensively cross-examined the father, whose testimony extended over the first three days of the hearing, partially completed cross-examination of the child's teacher and filed a written summation. She made numerous objections during the hearing and offered several exhibits into evidence. Despite her failure to appear on March 6, 2020, we conclude that the order was not entered on default and that the mother's appeal may be heard (see Matter of Amanda I. v Michael I., 185 AD3d at 1253-1254; Matter of Leighann W. v Thomas X., 141 AD3d at 877). That said, the record confirms that the mother was on clear notice that the hearing would resume on March 6, 2020. By failing to appear or otherwise alert Family Court that she would be unable to attend that day, the court acted within its discretion in closing the proof.
As to the merits, we conclude that Family Court's custody determination is supported by a sound and substantial basis in the record. As the party seeking to modify an existing custody order, the father was required to first demonstrate a change in circumstances since the entry of that order sufficient to warrant a best interests review (see Matter of Kanya J. v [*3]Christopher K., 175 AD3d 760, 761 [2019], lvs denied 34 NY3d 905, 906 [2019]). Family Court found, and we agree, that the child's removal from school due to the mother's refusal to have the child fully immunized, and her corresponding decision to homeschool him, established the requisite change in circumstances. Because the November 2017 custody order granting the mother sole custody was based on the father's incarceration at that time, the father's subsequent release from incarceration also constituted a change in circumstances warranting a best interests review (see Matter of Leah V. v Jose U., 195 AD3d 1120, 1121 [2012]). We further agree with Family Court's finding that a change in custody was in the child's best interests.
A key event here was the child's exclusion from school in early October 2019 for failing to have all the required immunizations. At that point, the child required an immunization shot for polio, hepatitis A and possibly two more for diphtheria, tetanus and pertussis (Dtap). By the time of the hearing, he would also need a shot for meningitis to return to school. As the assistant superintendent explained, the child did not need to get all immunizations before returning but did need to initiate and confirm appointments to complete the process. Advance notice of these requirements was provided to the mother and yet her response was to inform the assistant superintendent that she would not complete the immunizations but homeschool the child instead.
Both the child's former teacher and the assistant superintendent testified that the child needed a more structured, stable school environment for purposes of both academics and socialization. In the spring of 2019, the child was classified under an individualized education plan to participate in smaller classes to enhance his learning opportunities, all while taking the core curriculum. The assistant superintendent explained that the child was in seventh grade in the fall of 2019, but "functioning at best at a fifth-grade level." Moreover, the assistant superintendent explained that the child was "really benefitting from . . . the counseling supports" at school. Although counseling was available for the child while being homeschooled, the mother did not request that counseling continue. The assistant superintendent also expressed reservations about the mother's capability of providing proper homeschooling. For his part, the father testified that homeschooling was not the best option for the child "[b]ecause [he] needs a stable schooling environment, structured environment." If awarded physical custody, the father confirmed that he would have the child immunized and reenrolled in school. On this record, Family Court had ample reason to observe that "significant educational needs of the child [were] not being met" due to his removal from school. Moreover, we find it significant that the AFC expressed that the child's preference was to return to school.
Family Court [*4]determined that both parents offered a suitable household for the child. The court found that, since the father's release from incarceration, he had stabilized his home life and had a loving relationship with the child. Although it is abundantly clear from this record that the parties do not communicate well with each other, the father confirmed that he would be receptive to utilizing "parenting apps" to communicate with the mother. Deferring to the court's credibility assessments, we find that the court's determination to award sole custody to the father was in the best interests of the child and is supported by a sound and substantial basis in the record.
In this regard, we find no abuse of discretion in Family Court drawing a negative inference against the mother for failing to bring the child to the rescheduled Lincoln hearing. The record shows that the July 20, 2020 rescheduling order was mailed to the mother's confidential mailing address utilized throughout the proceedings. A parent served with an order to produce a child for a Lincoln hearing is obligated to comply and may not, as here, simply ignore the court's directive. A Lincoln hearing serves the vital purpose of allowing a court to ascertain a child's preference and concerns, as well as corroborating information obtained during the fact-finding hearing (see Matter of Lincoln v Lincoln, 24 NY2d 270, 272 [1969]; Matter of Christine TT. v Dino UU., 143 AD3d 1065, 1068 [2016]). By failing to cooperate, the mother undermined the court's opportunity to obtain this information. The mother's failure is particularly troubling given that the AFC confirmed that the child was willing to participate. As such, we find no error with the court drawing a negative inference to the extent that the child would have confirmed his attorney's stated position that he wished to return to school and spend more time with his father (see Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141 [1983]; Matter of Sloma v Sloma, 148 AD3d 1679, 1680 [2017]).
The mother's contention that the trial judge abused his discretion in declining to recuse himself from the matter is without merit. Under Judiciary Law § 14, "[a] judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he [or she] is a party, or in which he [or she] has been attorney or counsel, or in which he [or she] is interested, or if he [or she] is related by consanguinity or affinity to any party to the controversy within the sixth degree." "Recusal, as a matter of due process, is required only where there exists a direct, personal, substantial or pecuniary interest in reaching a particular conclusion, or where a clash in judicial roles is seen to exist" (People v Alomar, 93 NY2d 239, 246 [1999] [citations omitted]). "Absent legal disqualification [under Judiciary Law § 14], . . . a trial judge is the sole arbiter of recusal and his or her decision, which [*5]lies within the personal conscience of the court, will not be disturbed absent an abuse of discretion" (People v Regan, 192 AD3d 1393, 1394 [2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 959 [2021]; see Matter of Barney v Van Auken, 97 AD3d 959, 960 [2012], lv denied 20 NY3d 856 [2013]; Matter of Kelley v VanDee, 61 AD3d 1281, 1284 [2009]).
In support of her recusal motion, the mother posited that the trial judge would have difficulty remaining impartial due to the mother's vocal advocacy for Family Court reform, which included various writings in which she described the judge in a negative manner. The mother also noted that she had named the judge as a defendant in a federal lawsuit and claimed that his prior rulings against her demonstrated bias. These allegations do not establish a statutory basis for recusal under Judiciary Law § 14, and the record does not demonstrate that the trial judge had "a direct, personal, substantial[] or pecuniary interest in the outcome of the custody litigation" (Matter of Khan v Dolly, 39 AD3d 649, 651 [2007]). The fact that the mother named the trial judge as a defendant in a federal lawsuit and discussed him in a negative manner in connection with her advocacy for Family Court reform does not establish a conflict of interest bearing on his ability to remain impartial (see Matter of Wilson v Brown, 162 AD3d 1054, 1056 [2018]; Matter of Khan v Dolly, 39 AD3d at 651; Robert Marini Bldr. v Rao, 263 AD2d 846, 848 [1999]), and we are satisfied that the prior decisions of the trial judge [FN3] regarding this family were grounded in the record and not in any bias against the mother. On this record, the trial judge did not improvidently exercise his discretion in declining to recuse himself (see Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1334 [2020]; Matter of Kanya J. v Christopher K., 175 AD3d at 764; Matter of Kylene FF. v Thomas EE., 137 AD3d 1488, 1492 [2016]).
In light of our determination that the mother was not in default, the appeal from the January 2021 order has been rendered moot (see Matter of Leighann W. v Thomas X., 141 AD3d at 879).
Garry, P.J., Clark, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the appeal from the order entered October 2, 2020 is affirmed, without costs.
ORDERED that the appeal from the order entered January 19, 2021 is dismissed, as moot, without costs.



Footnotes

Footnote 1: These statements are not included in the record on appeal.

Footnote 2: Family Court also granted two of the father's violation petitions, issuing a "suspended judgment of commitment against [the mother] of 30 days in the County Jail, with the term of incarceration suspended on condition that she come into prompt compliance with the transfer of custody ordered on the modification petitions and that she comply with the newly issued custodial order going forward."

Footnote 3: To the contrary, "[a] judge has an obligation not to recuse himself or herself, even if sued in connection with his or her duties, unless he or she is satisfied that he or she is unable to serve with complete impartiality, in fact or appearance" (Matter of Wilson v Brown, 162 AD3d at 1056 [internal quotation marks and citations omitted]; accord Robert Marini Bldr. v Rao, 263 AD2d at 848).