Matter of Sherab X. v Michelle Y. (2025 NY Slip Op 07055)

Matter of Sherab X. v Michelle Y.

2025 NY Slip Op 07055

Decided on December 18, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 18, 2025

CV-24-1416
[*1]In the Matter of Sherab X., Respondent,
vMichelle Y., Appellant. (And Three Other Related Proceedings.)

Calendar Date:October 15, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Law Office of Bonnie C. Brennan, Esq., New Windsor (Bonnie C. Brennan of counsel), for appellant.
Claire Zimmerman Durst, Kingston, for respondent.
Ivy M. Schildkraut, Rock Hill, attorney for the child.

Powers, J.
Appeal from an order of the Family Court of Sullivan County (Anthony McGinty, J.), entered March 21, 2024, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2018). Pursuant to a 2021 judgment of divorce, which incorporated but did not merge the terms of a settlement agreement, the parties shared joint legal and physical custody of the child, with parenting time on an alternating weekly basis. However, the parties later informally agreed that the child would reside primarily with the father and stay with the mother every other weekend. After that arrangement continued for an extended period, the father petitioned for modification seeking primary physical custody, and the parties agreed in mediation to continue that custodial arrangement until resolution of this proceeding. The mother subsequently filed her own petition for modification seeking sole legal and primary physical custody of the child, a family offense petition and a violation petition. Following fact-finding and Lincoln hearings on these petitions, Family Court, among other things, granted the father's petition. In doing so, the court awarded the parties joint legal custody with the father having primary physical custody and the mother having parenting time on alternating weekends, as well as one weekday after-school or dinner visit. The mother appeals.
As the mother does not contest that a change in circumstances had occurred since entry of the prior order, the principal question becomes whether modification of the custodial arrangement is in the best interests of the child (see Matter of Mark JJ. v Stephanie JJ., 240 AD3d 1025, 1026 [3d Dept 2025]; Matter of Janaye D. v Zachary C., 240 AD3d 961, 962 [3d Dept 2025]). "In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Brooke PP. v Joshua QQ., 240 AD3d 1047, 1048-1049 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Kelly AA. v Christopher AA., 240 AD3d 1011, 1013 [3d Dept 2025]). "Family Court's credibility determinations are entitled to deference by this Court and we will not disturb its best interests determination if supported by a sound and substantial basis in the record" (Matter of Christine EE. v David FF., 235 AD3d 1156, 1158 [3d Dept 2025] [citations omitted]; see Matter of Debra YY. v Michael XX., 234 AD3d 1021, 1023 [3d Dept 2025]).
The father testified that the child has been [*2]primarily in his care since December 2021, and that they reside with the paternal grandmother in a three-bedroom, one-bathroom home, in which the child has his own bedroom. According to the father, the child initially came into his care after the child and the maternal grandmother quarreled and the mother believed the maternal grandmother was overwhelmed and needed time away from the child, especially considering that the maternal grandmother was also the mother's primary caregiver. The father and the mother later had a disagreement regarding what preschool the child would attend. The father wished to either wait a year before enrolling the child or, if not, have him attend preschool where the father resided. The mother, on the other hand, desired for the child to attend a private preschool near her home, which the father took issue with over concerns with the cost and that the child would regress, as he had just become comfortable at his daycare. Eventually, the mother agreed to allow the father to enroll the child in the preschool near his home, which the father did, and the father testified that the child was thriving in preschool. Notably, this preschool is a quick walk from the father's residence, the child has friends nearby and the father has a support system in the area. The father also claimed that he is the one to generally take the child to the pediatrician and dentist.
The father described that the mother rarely asks for additional time with the child and, even when he offers, she generally does not accept. The father described one incident, on Christmas Day in 2022, where the mother asked the father for additional time, and he assented. Later that day he received a video call from her during which, in the presence of the child, she stated that the child had ruined Christmas. When the father asked the child — who appeared as though he had been crying — if he wished to return to the father's home, the child indicated in the affirmative. According to the father, when the mother then began speaking, he politely told the mother that he was talking to the child and not her.
Upon cross-examination, the father acknowledged that police removed him from the home he previously shared with the mother in 2020. The father stated that, toward the end of their relationship, he and the mother argued, and she would throw things, but he specifically denied ever grabbing the mother by any part of her body. The father recalled one incident during the relationship where the mother shoved him and grabbed him by the throat, and he admitted that he grabbed her throat in response. He acknowledged that the mother repeatedly complained that he was "quick-to-anger" and indicated that, at one point, he attended therapy but never anger management. The paternal grandfather testified explaining that the father is patient with the child and, although he and the father had an argument recently, he did not recall what the argument pertained to. Additionally, the paternal [*3]grandmother testified that she had recently taken over exchanges of the child for the father because the mother would yell at the father, which upset the child.
The mother testified that she and her partner rent an apartment together, in which the child has his own bedroom. The mother described that she was diagnosed with systemic lupus in late 2020 which affected her ability to care for the child, and, therefore, following the incident between the child and the maternal grandmother, she had asked the father to take the child temporarily to allow her time for her health to improve. At the time of the hearing, the mother asserted that her condition is under control, and she feels much better than she had previously. According to the mother, to reach a compromise with the father who did not wish for the child to be enrolled for another year, she allowed him to enroll the child in the preschool where he resided. As to the child's enrollment in kindergarten, the mother wished for the child to attend the district where she resides, which she acknowledged would result in a change in school districts and, therefore, many other changes in the child's life. However, she believed this would be a beneficial change because, according to her, that school has "a very strong curriculum" and "diverse after-school activities" — however, she provided no objective evidence as to the qualities of either district.
As to the events of Christmas Day in 2022, the mother acknowledged that she told the child that he had ruined Christmas, but she later apologized to the child. To provide context to what had precipitated this, the mother explained that the child had struck her. As a result, she video called the father who began rapidly asking questions and, when the mother attempted to answer, he rudely and profanely said that he had not been asking her. During her testimony, the mother recounted instances of domestic violence allegedly perpetrated upon her and the child by the father. According to her, the father would yell in her and the child's faces and forcefully grab her by the wrists. The mother also described an incident where he took the child off the changing table by the leg and dropped him into bed, and an incident where she was playfully fighting with the father, and he squeezed his hands around her neck. There had also recently been an overnight Boy Scout event during the mother's parenting time, which she attended with the child, where the father was also in attendance because he had signed up to volunteer. During the event, the father followed the mother and the child around and then slept nearby to where her and the child slept, which made her uncomfortable because during their marriage he had said he would kill her in her sleep. The mother attested that she had allowed the child to reside with the father despite her fears of him because she did not believe she had any other option.
All told, the testimony established that the father has a stable, loving [*4]household and, with help from the paternal grandmother, he meets the child's needs with respect to schooling, medical care and activities. Further, the father has a strong bond with the child and uses appropriate discipline, and the child is happy at his school and living with the father. Although testimony similarly established that the mother loves the child and has suitable housing and resources to care for the child, Family Court appropriately found that it would be in the child's best interests to primarily live with the father inasmuch as the child would maintain stability by remaining in the same school district (see Matter of Faith NN. v Dewey OO., 228 AD3d 1047, 1048-1049 [3d Dept 2024]; Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1343 [3d Dept 2020]). Contrary to the mother's assertion, this determination does not evidence that the court had predetermined the matter but, rather, determined what custodial arrangement was in the best interests of the child considering the facts before it. Further, the mother's claim that she was in better health and able to care for the child on a full-time basis lacked independent support in the record. Additionally, while "the court must consider the effect of domestic violence when the allegations of domestic violence are proven by a preponderance of the evidence" (Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Frankie CC. v Rachel CC., 225 AD3d 1112, 1114 [3d Dept 2024]), the mother's self-serving testimony did not do so and, consequently, the court was not required to give weight to these allegations. Thus, deferring to the credibility determinations made below, the record provides a sound and substantial basis to support Family Court's award of primary physical custody to the father with designated meaningful parenting time for the mother (see Matter of Michael YY. v Teresa ZZ., 242 AD3d 1343, 1345 [3d Dept 2025]; Matter of Amy K. v Jeffrey L., 241 AD3d 1632, 1634 [3d Dept 2025]).
We must note, the mother did not present objective evidence as to the quality of the respective school districts or meaningful information regarding her illness during the course of the hearing. In an apparent attempt to remedy this, her brief to this Court contains a litany of references to websites purportedly containing information she now deems relevant. However, as this information is outside of the record on appeal, this amounted to an improper attempt to expand the record before this Court and, as such, this information will not be considered (see Matter of Virginia HH. v Elijah II., 211 AD3d 1201, 1204 [3d Dept 2022]). While this Court may "take notice of . . . new facts and allegations," this is limited "to the extent [these facts] indicate that the record before [us] is no longer sufficient" to determine the issue at hand (Matter of Charity BB. v Jeremy CC., 241 AD3d 1045, 1047 [3d Dept 2025] [internal quotation marks and citation [*5]omitted; emphasis added]). The information now presented by the mother is not new; rather, it is information she could have provided in the first instance. To the extent the mother claims that the failure on the part of counsel to present this proof deprived her of meaningful representation, we find this argument unavailing. Indeed, the mother's argument is entirely speculative, as it is not clear that production would have changed the result of the proceedings (see Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1077 [3d Dept 2024]), and, relatedly, the decision not to provide this information could have been a strategic decision on the part of counsel (see Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1011 [3d Dept 2018]). Thus, we do not find the mother to have been deprived of meaningful representation.
Similarly, we find the mother's passing assertions of judicial bias (see Matter of Ahnna N. [Rosa N.], 240 AD3d 964, 967 [3d Dept 2025]; Matter of Jaylin'J E. [Charlotte D.], 240 AD3d 995, 998 [3d Dept 2025], lv denied 44 NY3d 907 [2025]; Matter of A. DD. v B. EE., 238 AD3d 1282, 1285 [3d Dept 2025]; cf. Matter of Patrick UU. v Frances VV., 200 AD3d 1156, 1161 [3d Dept 2021]) and ineffective assistance on the part of the attorney for the child (see Matter of Britney A. v Jonathan A., 238 AD3d 1447, 1450 [3d Dept 2025]; Matter of Marcello OO. V Jayne PP., 202 AD3d 1407, 1409 [3d Dept 2022]) to both be unpreserved and, in any event, without merit.
Pritzker, J.P., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.Ordered that the order is affirmed, without costs.