Matter of Alex Y. v Mindy X. (2026 NY Slip Op 00411)

Matter of Alex Y. v Mindy X.

2026 NY Slip Op 00411

Decided on January 29, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 29, 2026

CV-23-1783
[*1]In the Matter of Alex Y., Respondent,
vMindy X., Appellant. (And Another Related Proceeding.)

Calendar Date:November 12, 2025

Before:Pritzker, J.P., Fisher, McShan, Powers and Mackey, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Lora J. Tryon of counsel), for appellant.
Laurie L. Paro, Canton, for respondent.
Amanda P. Geary, Canton, attorney for the child.

Powers, J.
Appeal from an order of the Family Court of St. Lawrence County (Craig Carriero, J.), entered September 13, 2023, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2012). Pursuant to a 2018 consent order, they shared joint legal custody of the child, with the father having primary physical custody and the mother having specified parenting time and any other time as may be agreed upon. The father filed the instant modification petition in January 2021, seeking sole legal custody of the child and to alter the mother's parenting time. In response, the mother filed an answer and cross-petition seeking sole legal and primary physical custody of the child. Following fact-finding and Lincoln hearings, Family Court found the parties' acrimonious relationship to have rendered them unable to coparent effectively, making joint legal custody no longer feasible and establishing a change in circumstances since entry of the prior order. The court then determined that it was in the best interests of the child for the father to have sole legal and primary physical custody and awarded the mother increased parenting time. The mother appeals.
"[T]o obtain modification of a prior custody order, a party must demonstrate that a change in circumstances has occurred since the issuance of th[e prior] order that would warrant a best interests analysis by Family Court" (Matter of Aimee A. v Austin ZZ., 213 AD3d 1056, 1057 [3d Dept 2023]). In the underlying decision, the court found that the parties' relationship had deteriorated to the point where joint legal custody was no longer feasible and, therefore, the father had demonstrated the requisite change in circumstances (see generally Matter of Michael M. v Makiko M., 238 AD3d 1304, 1305 [3d Dept 2025]; Matter of Debra YY. v Michael XX., 234 AD3d 1021, 1022 [3d Dept 2025]). Although we do not find this to be the case, the father has still demonstrated a change in circumstances since entry of the prior order. The parties have repeatedly faced disagreement as to who is to exercise parenting time during certain times not expressly delineated in the prior order and, despite not filing a violation petition, the father proved that the mother has regularly exercised her weeknight parenting time at a location not permitted by the prior order.
As a result, Family Court was required to assess whether modification of the prior order would serve to "promote the child[ ]'s welfare and happiness" (Matter of Adam E. v Heather F., 151 AD3d 1212, 1213 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]). In undertaking such analysis, courts "consider such factors as the past performance and relative fitness of the parents, their willingness to foster a positive relationship between the child and the [*2]other parent, their fidelity to prior court orders and their ability to both provide a stable home environment and further the child's overall well-being" (Matter of Mary N. v Scott M., 218 AD3d 890, 892 [3d Dept 2023] [internal quotation marks and citation omitted]; see Matter of Sarah I. v Ian J., 233 AD3d 1334, 1335 [3d Dept 2024], lv denied 43 NY3d 904 [2025]). "[A]lthough not determinative, the expressed wishes of the child are some indication of what is in his or her best interests, considering his or her age, maturity and potential to be influenced" (Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1584 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). "Given that Family Court is in a superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1155 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 901 [2022]; see Ricky SS. v Christine SS., 241 AD3d 1009, 1012 [3d Dept 2025]).
At the fact-finding hearing, the father testified that he has lived in the same home for over nine years and, at present, resides with the subject child and another child from a different relationship (hereinafter the half sister), who both have separate bedrooms. By contrast, according to the father, the mother has had various residences over the same period and she failed to notify him of her moves. The father described that the child attends school in the district where he resides, that he brings her every morning and she is doing quite well academically. Additionally, he supports the child's extracurricular activities and engages with her in a multitude of ways. According to the father, he and the mother communicate only through text messages and continuously have disagreements as to certain aspects of the parenting time schedule. The father acknowledged that he was arrested following an incident with a former girlfriend but, despite the child's presence at the location where he was arrested, he did not believe the child had witnessed it. The father denied the child having witnessed any incidents of domestic violence. Yet, he admitted that the child was present during a verbal altercation between himself and the half sister's mother but maintained that he had apologized to the child and nothing similar had happened since. Additionally, aside from the occasional drink with dinner, he denied having consumed alcohol and driven with the child in the vehicle. The mother admitted that the child is doing well in school and that, if her petition were granted, this would result in a change in school districts. Despite claiming to have completed some online research, the mother provided limited information as to the school district where she resides and conceded that she had [*3]not discussed enrolling the child with faculty. The mother testified that the child has become more easily agitated under the present custody arrangement and often appears sad and grows more attached when the mother's parenting time comes to an end. Still, the mother spoke only in generalities and failed to describe any specific concerns or how she assuages the child's alleged anxieties, other than stating that she tells the child that she will miss her. The mother also explained that she had inquired about therapy for the child but that the father dismissed her concerns, stating that the child did not need therapy. That said, the father testified that the child had a counselor during prior Family Court proceedings and sees the counselor at her school as needed.
As to the issue of legal custody of the child, "joint legal custody is an aspirational goal in every custody matter but may not be feasible or appropriate in cases where the parents are unable to effectively and directly communicate with one another to care for the child's needs" (Matter of C.M. v Z.N., 230 AD3d 1409, 1411 [3d Dept 2024] [internal quotation marks, brackets, ellipsis and citations omitted]). While it is clear from the record that the parties have demonstrated difficulty communicating, the record fails to evidence that this is to such a degree that joint legal custody is no longer feasible. The issues as to which they cannot agree — aside from the limited testimony regarding the matter of therapy — largely stem from claimed ambiguities in the parenting time schedule itself. Though they may disagree at times, the record demonstrates that they are "fit and loving parents who are able to constructively communicate regarding the child[ ]" (Matter of Carla UU. v Cameron UU., 227 AD3d 1257, 1260 [3d Dept 2024]). Thus, we do not find a sound and substantial basis in the record for Family Court's determination that the parties could not effectively coparent so as to render joint legal custody unworkable (see Leah R. v Taylor R., ___ AD3d ___, ___, 2025 NY Slip Op 06938, *2 [3d Dept 2025]; Matter of C.M. v Z.N., 230 AD3d at 1411-1412; compare Matter of Marina C. v Dario D., 228 AD3d 1016, 1018 [3d Dept 2024], lv denied 42 NY3d 909 [2024]; Matter of Patricia Y. v Justin X., 219 AD3d 1586, 1588 [3d Dept 2023]). Therefore, we must reverse this aspect of the underlying order and grant the parties joint legal custody.

We find the remainder of Family Court's custodial arrangement to be supported by a sound and substantial basis in the record; even so, we take pause with certain characterizations made in the underlying decision. Upon being called to testify by the mother, multiple of the father's former romantic partners detailed the acrimonious nature of these relationships, which the court characterized as an attempt by the mother to gain "advantage over the [f]ather." Presentation of relevant aspects of relationship history is important in matters of custody as illustrative of not only [*4]a parent's stability but, additionally, who the parent may involve in a child's life. Nevertheless, we disagree with the mother's assertion that the court did not adequately consider the allegations of domestic violence raised by these witnesses (see generally Matter of Mackenzie OO. v Ian NN., 242 AD3d 1345, 1350 [3d Dept 2025]; Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024]). The court detailed the verbal altercation that occurred between the father and the half sister's mother and credited the father's testimony that the incident was a stand-alone occurrence. Relatedly, the court found certain witnesses incredible and others to have been motivated by bias and, as a result, credited the father's testimony that the nonspecific incidents of domestic violence testified to had not occurred. We defer to these credibility determinations and, consequently, find that the allegations of domestic violence were not proven by a preponderance of the evidence (see Matter of Sherab X. v Michelle Y., ___ AD3d ___, ___, 2025 NY Slip Op 07055, *4 [3d Dept 2025]). As to the custodial arrangement, although the mother is not unfit, the father has shown more stability and continued primary physical custody with him maintains consistency in the child's academic and social life. In addition, the father has strong familial support and has demonstrated greater willingness to foster a relationship between the child and the mother. The mother, conversely, has relocated multiple times without notifying the father, has less confirmed support, has flouted certain aspects of the prior order and the maternal grandmother was linked to unfounded Child Protective complaints against the father in the past. Thus, there is a sound and substantial basis in the record for the court's conclusion that it was in the child's best interests to continue primary custody of the child with the father (see Matter of Satema C. v Stephen D., 221 AD3d 1304, 1306-1307 [3d Dept 2023]; Matter of Jennifer VV. v Lawrence WW., 186 AD3d 946, 949 [3d Dept 2020]; Matter of Colvin v Polhamus, 145 AD3d 1350, 1352 [3d Dept 2016]).[FN1]
Finally, the mother's assertion that the child was not meaningfully represented by the attorney for the child (hereinafter AFC) at trial is without merit. An AFC "must zealously advocate the child's position, and . . . if the child is capable of knowing, voluntary and considered judgment, the AFC should be directed by the wishes of the child, even if the AFC believes that what the child wants is not in the child's best interests" (Matter of Jennifer VV. v Lawrence WW., 182 AD3d 652, 653 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Matter of Rotundo v Deptola, 232 AD3d 1323, 1324 [4th Dept 2024]). "The Rules establish only two circumstances in which an AFC may adopt a position that does not reflect the child's wishes — specifically, when he or she is convinced either that the child lacks the capacity for knowing, voluntary and considered [*5]judgment, or that following the child's wishes is likely to result in a substantial risk of imminent, serious harm to the child" (Matter of Jennifer VV. v Lawrence WW., 182 AD3d at 653-654 [internal quotation marks and citations omitted]; see Matter of Cunningham v Talbot, 152 AD3d 886, 886-887 [3d Dept 2017]).
Although the mother takes issue with the AFC's decision to advocate for a position adverse to the child's wishes, the AFC made clear that she was doing so and adequately apprised Family Court of the child's wishes as required (see 22 NYCRR 7.2 [d] [3]; Matter of Michael A. v Chanice T., 232 AD3d 594, 595 [2d Dept 2024]; cf. Matter of Zakariah SS. v Tara TT., 143 AD3d 1103, 1107 [3d Dept 2016]; compare Matter of Jennifer VV. v Lawrence WW., 182 AD3d at 654-655).[FN2] The AFC articulated that this substitution was the result of what she believed to be coaching from both parents which, in conjunction with the years of ongoing litigation, had impacted the child's ability to make a voluntary judgment despite her age and relative maturity (see 22 NYCRR 7.2 [d] [3]; cf. Matter of Vega v Delgado, 195 AD3d 1555, 1556 [4th Dept 2021]; Matter of Jennifer VV. v Lawrence WW., 182 AD3d at 654). Accordingly, despite this and the AFC's failure to timely submit summations (see Matter of Rotundo v Deptola, 232 AD3d at 1324; Matter of Terramiggi v Tarolli, 151 AD3d 1670, 1672 [4th Dept 2017]; cf. Matter of Laura E. v Matthew E., 226 AD3d 1117, 1118-1119 [3d Dept 2024]), considering her active involvement, we find the AFC to have provided the child with meaningful representation (see Matter of Sharyn PP. v Richard QQ., 83 AD3d 1140, 1143 [3d Dept 2011]; compare Matter of Payne v Montano, 166 AD3d 1342, 1343-1344, 1345 [3d Dept 2018]).
Pritzker, J.P., Fisher, McShan and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded sole legal custody of the child to petitioner; petitioner and respondent are awarded joint legal custody; and, as so modified, affirmed.

Footnotes

Footnote 1: Although not dispositive, we note that this determination is consistent with the position advanced by the attorney for the child.

Footnote 2: In the AFC's written summation to Family Court, submitted after the order on appeal was entered, the AFC stated the child's wishes expressed during the Lincoln hearing. It is manifest that Lincoln hearing testimony should generally remain confidential (see Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1297 [3d Dept 2019], lv denied 35 NY3d 905 [2020]) and, as the child's wishes were already placed on the record, such disclosure served no purpose other than to breach that confidentiality.